A96A0977. SAPP v. THE STATE.
(474 SE2d 233)

McMurray, Presiding Judge.

Defendant Charles Sapp, also known as Charlie Allen Sapp, was charged in an indictment with "CRIMINAL ATTEMPT AT THEFT BY TAKING (AUTO)," "OBSTRUCTION [OF A LAW ENFORCE-MENT OFFICER] BY GIVING FALSE NAME," "THEFT BY RECEIVING STOLEN PROPERTY," and "CRIMINAL DAMAGE TO PROPERTY IN THE SECOND DEGREE." A fifth count alleged that defendant was a recidivist, for having been convicted of "FORGERY (SEVEN COUNTS)," "POSSESSION OF CONTROLLED SUB-STANCE," and "ROBBERY BY INTIMIDATION." At defendant's jury trial, Eunice Arkwright Bonaparte testified that her 1982 Grand Prix was stolen from outside of her apartment sometime after 8:00 p.m. on January 10, 1995. Randy J. Holcomb testified that he was awakened "between two and two-thirty," on the morning of January 11, 1995. He "looked out the window and . . . saw somebody moving [his] car, [a 1984 Parisienne,] so [he] turned on the porch light, and a couple of people got out and ran and jumped in another car and drove off." Randy J. Holcomb "noticed that the steering column [on his car] was broken so [he] went back inside and called the police." At approximately 3:15 a.m. January 11, 1995, Corporal Terry Shoop of the Savannah Police Department observed a vehicle with two male occupants, "just sitting stopped in the middle of the street," with its four-way hazard lights operating. "It was a '82 Pontiac Grand Prix bearing Georgia license plate Charles George Tom 275, had a Chatham County '94 Georgia plate on it." "After [Corporal Shoop] pulled up behind the vehicle, the subject sitting on the driver's side . . . exited . . . and took off running east . . ., [while] the other subject exited the vehicle but did not run." Corporal Shoop identified defendant as that other subject, i.e., the passenger. Corporal Shoop "noticed there [were] no keys in the ignition." He walked around to the driver's side and "noticed the steering column was spiked and that the back window had been busted out on the left side. . . . And there was also a screwdriver laying in the seat, in the front seat." Defendant gave his name to Corporal Shoop as Johnny E. Sapp and a date of birth of 3/21/63, and he stated he lived at 2104 Gable Street." Although Corporal Shoop "ran the tags, ran the V.I.N., [and] checked the glove box," he was unable to determine the identity of the owner, so he "wrote the report up as an abandoned vehicle since the driver fled and towed it in." Defendant was then released at the scene. "About 5:00 the next morning, the police department received a call that the vehicle had been stolen, and [Corporal Shoop] heard it go out, and [. . . so he] spoke with Ms. Bonaparte[.]" When Corporal Shoop attempted to interview defendant again, "a phone call was made to

Mr. Sapp's residence and . . . we spoke with his father, and we asked for Johnny. . . ." There is a Johnny E. Sapp, but that is defendant's brother. "[H]is father brought him down to the Detectives' Office that morning, and [Corporal Shoop realized], this is not the same man [he] spoke with that night." Corporal Shoop subsequently "identified [defendant] through a photograph as being the person [he] spoke with that morning." Judging from defendant's position as a passenger in the stolen vehicle, he "could have seen that the car had no keys to it[, . . . and] could have seen the window busted out in the back." Corporal Franz Flavian of the Savannah Police Department Identification Section lifted fingerprints from the passenger front door handle and inside the passenger window of Randy J. Holcomb's "[19]84 Pontiac [Parisienne], blue in color." Corporal William L. Schaeffer, also with the Identification Section of the Savannah Police Department was stipulated to be an "expert in the area of identification." Corporal Schaeffer explained that "[i]n the ridge detail of a fingerprint are . . . minutia points, and we use those minutia points on the inked fingerprint and on the latent fingerprint in order to make an identification. You use the minutia points themselves in a relative positioning on one card [to] examine against the other. If you come up with a certain number of . . . points of commonality, then you have in fact effectuated a match between the two." Corporal Schaeffer "use[s] ten minutia points of commonality to effect a fingerprint match. However, [he has also] been taught by the F[ederal] B[ureau of] I[nvestigation] that nine is sufficient." Corporal Schaeffer found 11 points of commonality between the latent fingerprint on the front passenger door handle of Randy J. Holcomb's vehicle and the inked fingerprint card for Charles A. Sapp, and concluded that "the inked fingerprint and the latent fingerprint were made by one and the same person." Michael Jackson saw defendant driving a Grand Prix on Treat Street in east Savannah about 9:00 or 10:00 on the night of January 10, 1995. Defendant told Michael Jackson "first it was his [defendant's] father's car, then he told [Michael Jackson] later on in the conversation that the car was stolen." Specifically, "he just said the car was hot." Defendant subsequently asked for Michael Jackson's "help to pop the steering wheel . . ." of a Parisienne defendant planned to steal and sell for parts. "When you pop a steering wheel, you [pop] the lock off the steering wheel so you can . . . drive the car away without using a key." Michael Jackson observed as defendant "got in the car. He was in there for a minute. He put his feet on the brake lights. That's to signal me [Michael Jackson] to come and help him pop the steering wheel. . . ." As Michael Jackson approached, defendant "slid over to the passenger side. . . ." The noise of breaking into the steering column aroused someone. "[L]ights came on and the man came out." Michael Jackson and defendant fled, with

Michael Jackson driving the Grand Prix in which defendant had arrived. Michael Jackson was driving to his home when "the car turn[ed] off." Michael Jackson "was trying to crank the car up . . . when the police came." Defendant testified on his own behalf, contending that he had no knowledge that the Grand Prix had been stolen and that he had only accepted a ride from Michael Jackson, when the car ran out of gas.

At the close of the evidence, the trial court directed a verdict of acquittal as to Count 4, criminal damage to property in the second degree. The jury acquitted defendant of theft by receiving but found him guilty of criminal attempt at theft by taking (auto) and obstruction of a law enforcement officer by giving a false name. Defendant's motion for new trial was denied and this appeal followed. *Held*:

1. Defendant's first enumeration of error urges the general grounds. The evidence of defendant's accomplice is corroborated in material respects and is, therefore, sufficient under OCGA § 24-4-8 and the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) to authorize the jury's verdict that defendant is guilty, beyond a reasonable doubt, as a party to the crime of attempted theft by taking as alleged in the indictment. *Walker v. State*, 142 Ga. App. 799, 801 (237 SE2d 205). The evidence was also sufficient to authorize the jury's verdict that defendant gave Corporal Shoop a false name with the intent to mislead that law enforcement officer in the discharge of his lawful duties, as alleged in the indictment. *Duke v. State*, 205 Ga. App. 689, 690 (423 SE2d 427). The enumeration of the general grounds is without merit.

2. Next, defendant contends the trial court erred in admitting State's Exhibit 2, the file card of defendant's ink fingerprints, over his objection as to lack of foundation. Review of the transcript, however, reveals that, after the State offered to redact information with a prior arrest, defense counsel stipulated to this exhibit's admissibility, stating to the trial court: "That being the case, I'm satisfied. . . . We can admit that." Thus, if any error was committed, it was self-induced and provides no basis for reversal. *McKibbons v. State*, 216 Ga. App. 389, 391 (3), 392 (455 SE2d 293).

3. In his third enumeration, defendant contends the trial court erred in permitting a juror to remain on the panel despite knowing one of the victims, Eunice A. Bonaparte. He argues he would have struck Mr. King for cause.

After Ms. Bonaparte was sworn in as the State's first witness, but before she testified, Juror King informed the trial court: "I know Ms. Bonaparte. I didn't know her last name had changed when they [the attorneys] were questioning at the onset [during voir dire]." When asked by the trial court, Juror King testified that any prior contact or acquaintance "would not [affect his decision]. It's just that

when that was asked whether we knew any of the witness[es] at the onset, I knew her. She and I went to the same home church together. We sung in the choir together. That was about twelve years ago. We haven't been in contact. I didn't know her name had changed." Defense counsel informed the trial court that, had he known of Juror King's relationship, he would have struck him. The trial court "[found] him acceptable, unless [defendant could] show . . . something . . . to [indicate] he couldn't be fair and impartial."

"A challenge for cause should be so made as to show clearly whether it is a challenge for principal cause or a challenge to the favor. *Turner v. State*, 114 Ga. 421, 424 (40 SE 308)." *Hagans v. State*, 77 Ga. App. 513 (hn. 3) (48 SE2d 700). "Challenges for favor are based on admissions of the juror or facts and circumstances raising a suspicion that the juror is actually biased for or against one of the parties. [Cits.]" *Jordan v. State*, 247 Ga. 328, 338 (6) (276 SE2d 224). "Where a prospective juror is not impartial and free from prejudice or bias, that juror is subject to being excused for cause. *Cade v. State*, 207 Ga. 135, 140 (60 SE2d 763) (1950). The decision as to whether or not to discharge the prospective juror is within the discretion of the [trial] court. *Wells v. State*, 261 Ga. 282 (404 SE2d 106) (1991)." *Perry v. State*, 264 Ga. 524 (2), 525 (448 SE2d 444).

We agree with defendant that the prospective juror's view of his own impartiality is not necessarily determinative. *Lively v. State*, 262 Ga. 510 (1), 511 (421 SE2d 528). In the case sub judice, however, the circumstances brought to the trial court's attention by the juror's complete candor about a casual social acquaintance from 12 years earlier indicate that juror's sincere desire to be entirely fair. "There is nothing in the record raising any suspicion that [this individual was] biased against [defendant]. Consequently, the trial court did not err in overruling the challenge." *Cargill v. State*, 255 Ga. 616, 625 (6), 626 (340 SE2d 891).

4. Defendant further complains of State's Exhibit 2, the card with his fingerprints, arguing that his character was impermissibly placed in issue. "The fact that a copy of one's fingerprints is on record is not indicative of prior criminal activity and it alone does not introduce the issue of a defendant's character into issue. See, e.g., OCGA §§ 3-3-2 (c); 16-11-129 (c); 43-38-7 (d); 49-5-62." *Weldon v. State*, 175 Ga. App. 172, 173 (2) (333 SE2d 23). See also *Cooper v. State*, 182 Ga. 42 (2) (184 SE 716). Moreover, in the case sub judice, this exhibit was redacted to remove any reference to prior charges.

5. In his fifth enumeration, defendant contends the trial court erred in imposing a felony sentence of ten years to serve, when no proof regarding the value of the property taken was offered at trial. He argues that he should have been sentenced as a misdemeanant under OCGA § 16-8-12 (a) (1). See also OCGA § 16-4-6 (c).

"Value is not an element of the crime of theft by taking as proscribed by Code Ann. § 26-1802 (a) [now OCGA § 16-8-2 (a)]. . . . Thus, the value of stolen items is [generally] relevant only for purposes of distinguishing between a misdemeanor and a felony. Code Ann. § 26-1812 [now OCGA § 16-8-12]." *Stancell v. State*, 146 Ga. App. 773 (2) (247 SE2d 587). But the property subjected to defendant's attempted theft in the case sub judice was a motor vehicle, and so the applicable sentencing provision is OCGA § 16-8-12 (a) (4) (A): "The provisions of [OCGA § 16-8-12 (a)] (1) . . . notwithstanding, if the property which was the subject of the theft was a motor vehicle or was a motor vehicle part or component which exceeded $100.00 in value, [the punishment shall be] by imprisonment for not less than one nor more than 20 years or, in the discretion of the trial judge, as a misdemeanor." "We read [this] statute as permitting felony punishment for the [attempted] theft of a motor vehicle, regardless of value, and requiring evidence of value exceeding $100 only where a motor vehicle part or component was the subject of the [attempted] theft. Our reading of the statute comports with OCGA § 16-8-18, which defines as a felony the entry of a person into a motor vehicle with intent to commit a theft." *Preston v. State*, 183 Ga. App. 20, 23 (7) (357 SE2d 825). In the case sub judice, the trial court committed no error in imposing a felony sentence for defendant's attempted theft of a motor vehicle.

*Judgment affirmed. Johnson and Ruffin, JJ., concur.*

DECIDED JULY 15, 1996 —
RECONSIDERATION DENIED AUGUST 6, 1996 —

*Caeser J. Burch*, for appellant.
Charlie Sapp, *pro se.*
*Spencer Lawton, Jr., District Attorney, Barbara G. Parker, Assistant District Attorney*, for appellee.