A96A2487. PORTER v. THE STATE.
(480 SE2d 291)

McMURRAY, Presiding Judge.
Defendant was charged in an indictment in Count 1 with "CRIMINAL ATTEMPT — THEFT BY TAKING MOTOR VEHICLE," in that he "enter[ed] a 1987 Cadillac, a motor vehicle, property of Shervan Lee Wilson, and [broke] the steering column of said vehicle[.]" Defendant was further charged in Count 2 with "OBSTRUCTION OF AN OFFICER," in that he fled from arrest. At defendant's jury trial, Ray Earl Carter testified that about 1:00 a.m. on September 20, 1995, as he was watching the news on television, he observed a brown Cadillac automobile slowly cruise up and down the street in front of his apartment. "And then when it got to this end [of the street] down here, [he] saw it turn the lights out and come back up this street here and park." Mr. Carter then "saw two individuals walking down the walkway [after exiting the brown Cadillac. Mr. Carter was suspicious because he knew] most of the people in [his] complex and they didn't look . . . like anybody [he] knew. . . ." "One was a male, . . . about 6'1". The other was a male, . . . about 5'10" . . .: They started walking down towards building G. When they got to building G, they stopped in front of a car which was a Cadillac, a white Eldorado Cadillac." "When they got to that car, they started turning and looking around like they were trying to find out if somebody was watching them." "It looked suspicious. . . . When they got to the car, [Mr. Carter] dialed 9-1-1." Mr. Carter "saw them get inside

the Cadillac, which he knew the owner." "The 6'1" . . . gentleman got on the driver's side. The 5'10" . . . gentleman got on the passenger's side." Mr. Carter is "from California. And the guy that owns the [white] car, he's from California. . . . And [Mr. Carter] knew that was somebody else in his car. It wasn't him. [Mr. Carter] knew it." The two men were inside the car "[t]hree to five minutes." In response to Mr. Carter's call to 9-1-1, two units from the Clayton County Police came to the scene. As the police pulled up to the white car, Mr. Carter "saw the two gentlemen exit the car on each side and run through the breezeway. . . ."

Officer David Brian Hardwick, a Clayton County police officer, "and Officer Smithwick were dispatched [in separate cars] to Lake of the Woods apartments on a call of . . . entering auto in progress or a theft of auto in progress." "When [they] arrived, Officer Smithwick pulled in directly behind the white Cadillac, as if to block it in. Simultaneously, as he did that, [Officer Hardwick] observed two heads. . . . When Officer Smithwick pulled up, [Officer Hardwick] saw a head pop up here and a head pop up here." "The one on the driver's side of the vehicle was the tallest." "At that point, they looked and saw the police vehicle. They stood up and fled on foot." "[The officers] lost visual of the subjects in that wood line. However, [Officer Hardwick] could still here [sic] them running for a period of time. Then the running stopped." A "helicopter came over and was searching once [the police] had the perimeter set up." "In approximately ten minutes after [the police] lost visual, they [the suspects] were located down in this area in some thick brush laying down, down in some briars covered up. Both subjects were located within about ten feet of each other, laying down in the briars." Officer Hardwick identified defendant as "[t]he person [he] saw when [that person] popped out of the driver's side of the vehicle. . . ." Defendant was also identified as that "person [Officer Hardwick] found . . . in the woods. . . ." Once "the subjects were secured, [Officer Hardwick] went back and looked at the vehicle. The steering column of the vehicle was damaged, as if there was an attempt to hot wire the vehicle." In Officer Hardwick's experience, "the subjects were attempting to steal that vehicle. There's no other motive for doing damage to the steering column other than attempting to steal the vehicle."

Shervan Lee Wilson, the owner of a white and gold 1987 Cadillac Eldorado, testified that on the evening of September 19, 1995, his car doors "were locked." When he next examined the car, he "noticed that the steering column was broke." Officer Alan Edward Smithwick of the Clayton County Police Department "saw Officer Hardwick enter the breezeway following two . . . males. . . ." He affirmed that "the people [he and Officer Hardwick] arrested fit the description of the people [they had] chased. . . ." Officer Smithwick "recognize[d]

[defendant as] the person that Officer Hardwick took down[.]"

Faheem Ameer Reed was called as a defense witness and admitted persuading defendant to drive him to that particular apartment complex. Faheem Ameer Reed "[n]ever [told defendant] that he [was] planning on stealing the car[; rather, . . . Faheem Ameer Reed] was lying to [defendant] the whole time about this just so that [defendant] would take [him] to the apartments." Defendant took the stand and denied any knowing involvement in his companion's attempted theft of the vehicle. He confirmed that, as the police approached, they "had their lights off, their headlights off. It wasn't no sirens on; it was just like the blue [strobe light on] top of the car." Defendant was "running with him[, i.e., the companion], but . . . didn't run the same path he ran. [Defendant] ran at the opposite, around the building." Defendant further conceded: "I'm taller than Faheem. I'm taller than Reed."

The jury found defendant guilty of both charges and he was sentenced to serve ten years as to Count 1 and a concurrent twelve months to serve as to Count 2. His motion for new trial was denied and this appeal followed. *Held*:

1. Defendant's second enumeration contends the trial court erred "in re-opening the State's case. . . ."

In this regard, the record shows that Officer Smithwick failed to abide by a subpoena to appear and testify at trial. At the close of the first day of trial, on April 3, 1996, the State "rest[ed]." But the trial court announced it would "send this jury home until 8:30 tomorrow morning, at which time we will continue the case[, . . . with the dual-edged promise to the State's Attorney that,] if the State has [Officer] Smithwick here and can testify, fine. If not, I'm going to grant a directed verdict in behalf of the Defendant."

(a) The State argues in reply that defendant waived any valid exception to reopening the prosecution's case, because he failed to make a contemporaneous exception to the trial court's sua sponte ruling. This argument was previously considered by the whole court and found to be without merit. *Ford v. State*, 200 Ga. App. 376 (408 SE2d 166).

(b) "The trial court has a wide discretion in permitting the [S]tate to introduce additional evidence after it has closed its case. See *Britten v. State*, 221 Ga. 97, 100 [(4), 101] (143 SE2d 176), and cits." *King v. State*, 230 Ga. 581, 582 (3) (198 SE2d 305). In *Burden v. State*, 182 Ga. 533, 534 (3) (186 SE 555), the Supreme Court of Georgia unanimously held it was within the discretionary authority of the trial court to reopen the case and allow the State to introduce further testimony, even though such testimony was not in rebuttal of evidence offered by the defendant.

The authorities cited by defendant, regarding the impropriety of

a trial court's comments on the merits of defense strategy, are not germane to the question whether the trial court in the case sub judice abused its discretion in permitting Officer Smithwick to testify after the State had rested. The trial court's decision to permit the State to reopen the evidence will not be disturbed on appeal when no abuse of discretion is shown, and in the case sub judice, defendant has failed to demonstrate any such abuse of discretion. *Edwards v. State*, 219 Ga. App. 239, 245 (5) (464 SE2d 851). Compare *Smith v. State*, 156 Ga. App. 563, 564 (1) (275 SE2d 140).

2. Defendant enumerates the general grounds.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). Conflicts in the testimony of the witnesses, including the State's witnesses, is a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citations and punctuation omitted.) *Ferguson v. State*, 221 Ga. App. 415, 419 (2) (471 SE2d 528).

In the case sub judice, defendant's own evidence places him at the scene, and identifies him as the taller of the two suspects flushed out of the nearby woods. Yet he denied any knowledge of or participation in his accomplice's plan to steal the car. Thus, the jury was faced with a conflict in the evidence. "The jury resolved this conflict in favor of the State, and this Court will not substitute its judgment as to witness credibility for that of the jury." (Citations and punctuation omitted.) *Green v. State*, 218 Ga. App. 648, 649 (1) (463 SE2d 133). Ray Earl Carter saw two unknown persons approach and enter his neighbor's car, the taller of the two on the driver's side. "The testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-4-8. The suspects spent a matter of moments in the vehicle and both fled at the sight of the police car's flashing blue lights. The pair left the car with a broken steering column. Defendant and his accomplice were arrested within minutes near the scene. The police found no other persons hiding in the woods. In our view, the evidence, although largely circumstantial, was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307, supra, to authorize the jury's verdict that defendant is guilty, beyond a reasonable doubt, as a party to the offense of criminal attempt — theft by taking a motor vehicle as alleged in the indictment. *Sapp v. State*, 222 Ga. App. 415, 417 (1) (474 SE2d 233). But as to the misdemeanor offense of obstruction of an officer (obstructing or hindering a law enforcement officer)

under OCGA § 16-10-24 (a), the evidence shows only that the pair fled at the sight of the police. While the officers gave chase, there simply is no evidence that either Officer Smithwick or Officer Hardwick, in a show of lawful authority, called out to the suspects to halt and that the defendant failed to submit to that lawful authority. Consequently, the evidence is not sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307, supra, to sustain defendant's misdemeanor conviction for obstruction of an officer (obstructing or hindering a law enforcement officer). See *Chaplin v. State*, 141 Ga. App. 788, 790 (2) (234 SE2d 330).

*Judgment affirmed in part as to felony conviction for criminal attempt — theft by taking motor vehicle. Judgment reversed in part as to misdemeanor conviction for obstruction of an officer (obstructing or hindering a law enforcement officer). Johnson and Ruffin, JJ., concur.*

DECIDED JANUARY 16, 1997.

*Steinberg & Vrono, Charles J. Vrono*, for appellant.
*Robert E. Keller, District Attorney, Brian J. Amero, Assistant District Attorney*, for appellee.