## A00A0317. BARNETT et al. v. THE STATE.
### (536 SE2d 263)

Ruffin, Judge.

Following a jury trial, Christopher and Jonathan Barnett were convicted of armed robbery. Jonathan Barnett was also convicted of false imprisonment and criminal trespass. They both appeal, claiming that the evidence was insufficient and that the trial court erred in reopening the evidence and in refusing to give certain requested jury charges. For reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, the evidence shows that Patrick Jordan, Sean Roberson, and the Barnetts gathered in Roberson's house and decided to order Chinese food and hold up the delivery man. Jonathan Barnett called his mother to get the number for the restaurant, and Roberson then ordered about $45 worth of food for delivery to his house. The four discussed how to go about the robbery and decided that Roberson would answer the door, Jordan would have a gun, Christopher Barnett would stand in a hallway inside the house, and Jonathan Barnett would go outside and move the delivery man's car. Roberson testified that his brother Dorion, who was also present in the house, got his mother's gun from her car and that both defendants handled the gun before the delivery man arrived.

When the delivery man, Zhou Xing Zhao, arrived with the food, Sean Roberson answered the door. Roberson testified that, after Zhao handed him the food, "we all got scared" and Christopher Barnett said "just tell the man to leave." Roberson told Zhao that he did not have any money. Jordan then pointed his gun at Zhao and told him to come inside the house. Roberson took Zhao's money while Jordan threatened Zhao with the gun, and then Roberson hit Zhao on the head with a frying pan. During this time, Jonathan Barnett was outside the house, and Christopher Barnett was in the hallway inside the house.

Zhao dropped to the ground after being hit. Jonathan Barnett came back inside the house and helped Sean and Dorian Roberson drag Zhao to Zhao's car and place him in the back seat. These three individuals then drove several blocks, with Sean Roberson driving

and Jonathan Barnett giving him directions. Zhao testified that the individual in the back seat, presumably Dorian Roberson, was pointing a gun at his head. They stopped the car on a street, dragged Zhao out of the car, and left him lying next to a tree. The three then ran back to the Roberson residence and found Jordan and Christopher Barnett dividing up the cash from the robbery. Jordan, Sean Roberson, and the Barnetts received $50 apiece, and each in turn gave Dorian Roberson $5.

1. In two enumerations, both defendants claim that the trial court erred in reopening the evidence after the State rested. At the close of the State's evidence, Christopher Barnett moved for a directed verdict. The trial court stated that the only evidence connecting the defendants with the crime was the uncorroborated testimony of an accomplice, Sean Roberson, who testified on behalf of the State. The prosecutor then moved to sever the cases and proceed against Christopher Barnett alone, but the trial court denied the motion. The prosecutor then asked to concede a directed verdict as to Jonathan Barnett and to proceed with trial against Christopher Barnett. The trial court did not rule on this request but had the following colloquy with the prosecutor, outside the presence of the jury:

> The Court: Don't you have other witnesses?
> Prosecutor: We have a Co-defendant, Your Honor.
> The Court: And, there's a juvenile somewhere, a 14 year old. [Sean Roberson's] brother. And, another Co-defendant? I mean, I don't know what your problem is. . . . There is a Co-defendant that has pled guilty and gave a statement to me implicating these two Defendants.
> Prosecutor: Mr. Patrick Jordan?
> The Court: Yes. But, if you don't want to call him — do you wish to rest?
> Prosecutor: Your Honor, I'm still — we would call Patrick Jordan as a State's witness.
> The Court: You want to re-open?
> Prosecutor: Yes, your Honor, with the Court's permission.

The trial court then stated that it would exercise its discretion to reopen the evidence. Counsel for both defendants objected to reopening "because the State had rested and we had already . . . made the motion for directed verdict as a result of them resting." The trial court overruled the objection, and the State called two additional witnesses, Jordan and Dorian Roberson.

Both defendants claim that the trial court erred in reopening the evidence. They do not contend that, upon a proper motion by the State, the court would have lacked the discretion to reopen the evi-

dence.[1] Rather, they complain that the State "made no motion of its own" to reopen the evidence and that the trial court acted partially in suggesting that the State reopen the evidence. The defendants did not, however, raise these objections at trial but simply objected on the ground that the State had already rested and they had already moved for a directed verdict.[2] "If counsel desires to preserve an objection upon a specific point, the objection must be on that specific ground. Otherwise, this court will not consider it."[3] Because the defendants did not object to reopening the evidence on either of the grounds asserted on appeal, these enumerations present no basis for reversal.[4]

2. Both defendants challenge the sufficiency of the evidence with respect to their armed robbery convictions, arguing that there was no evidence presented to corroborate Sean Roberson's testimony concerning their involvement in the robbery.

A defendant may not be convicted of a felony on the uncorroborated testimony of an accomplice.[5] However,

> it is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular. Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict. The sufficiency of the corroboration of the testimony of the accomplice to produce conviction of the defendant's guilt is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it can not be said, as a matter of law, that the verdict is contrary to the evidence.[6]

The testimony of a second accomplice may satisfy the corroboration

---

[1] See *Porter v. State*, 224 Ga. App. 276, 278 (1) (b) (480 SE2d 291) (1997) (trial court has "wide discretion" in allowing State to reopen case after resting). See also *Britten v. State*, 221 Ga. 97, 101 (4) (143 SE2d 176) (1965).

[2] Neither of these objections has any merit, as it is well settled that a trial court has discretion to reopen the evidence after the State has rested and the defendant has moved for a directed verdict. See *Porter*, supra; *Jackson v. State*, 230 Ga. App. 292, 296-297 (7) (496 SE2d 315) (1998).

[3] (Punctuation omitted.) *Arnold v. State*, 236 Ga. App. 380, 383 (3) (511 SE2d 219) (1999).

[4] See *Gulley v. State*, 271 Ga. 337, 346 (11) (519 SE2d 655) (1999) (defendant waived claim of judicial partiality by failing to raise it at trial).

[5] OCGA § 24-4-8.

[6] (Citations and punctuation omitted.) *Whitlock v. State*, 239 Ga. App. 763, 764-765 (521 SE2d 901) (1999).

requirement.[7]

Here, there was corroborating evidence connecting both defendants to the crime. Dorian Roberson testified that he was at his brother's house along with both defendants and Jordan. He testified that he helped his brother and Jonathan Barnett place Zhao into the car and drive away. He testified that, upon returning to the residence, his brother, Jordan, and both defendants divided the money among themselves and gave him a share. This testimony was sufficient to connect both Jonathan and Christopher Barnett to the robbery and, thus, constituted sufficient corroboration of Sean Roberson's testimony.

The defendants contend that the evidence shows at most that they were accessories after the fact, and not parties to the crime of armed robbery. However, Sean Roberson testified that both defendants participated in the planning of the robbery and handled the gun before the delivery man arrived. Jonathan Barnett obtained the telephone number for the restaurant. Both defendants gave Sean Roberson food orders to give to the restaurant, thus participating in inducing the victim to come to the house. Both defendants took their assigned stations before the delivery man arrived — Jonathan going outside and Christopher standing in the inside hallway. Both defendants admit in their appellate briefs that they were "present when the plan was talked about to rob the delivery man" and that they "knew that a robbery was going to take place." Although

> mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred.[8]

Viewed in the light most favorable to support the verdict, the evidence of the defendants' actions before and after the robbery was sufficient to show that both defendants were guilty of being parties to the crime of armed robbery.

3. Jonathan Barnett contends that the evidence was insufficient to support his conviction for false imprisonment. "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority."[9] Barnett states that Zhao, who was apparently feigning unconsciousness when Barnett placed him in the car and

[7] *Gaskin v. State*, 221 Ga. App. 142 (1) (470 SE2d 531) (1996).

[8] (Punctuation omitted.) *Mosier v. State*, 223 Ga. App. 75, 76 (476 SE2d 842) (1996).

[9] OCGA § 16-5-41 (a).

took him to another location, "never expressed his will during this time as to where he wanted to go or not to go." Thus, according to Barnett, "[t]here is no evidence that the acts of Appellant . . . were against the will of the victim." We believe, however, that when a person is bashed on the head during an armed robbery, dragged outside, placed into the back of a car with a gun to his head, and driven to another location, where he is dragged out of the car and left for dead, the jury may reasonably infer that such acts were against the victim's will.

4. Jonathan Barnett also contends that the evidence was insufficient to support his conviction for criminal trespass. Under OCGA § 16-7-21 (a), a person commits the crime of criminal trespass when he "knowingly and maliciously interferes with the possession or use of the property of another person without consent of that person." Barnett does not deny that entering into and driving another's automobile without his consent constitute an interference with his possession or use of the automobile. Instead, he claims that there was no evidence he did not have Zhao's consent. As with the false imprisonment claim, this argument is at the core of absurdity, as there could not be the slightest doubt that Zhao did not consent to the use of his car in such a manner. When asked whether he "voluntarily let them drive his car," Zhao responded, "I was dragging — I was so scared. I absolutely don't want to resist."[10] The evidence was more than sufficient to support Barnett's conviction of criminal trespass.[11]

5. Defendants contend that the trial court erred in refusing to give their requested charge that

> [i]f you believe that the Defendant conspired with one or more other persons to commit the crime alleged in this indictment, but that the Defendant voluntarily and completely renounced and abandoned all participation in the criminal endeavor prior to the commission of the offense, if any, then the Defendant would not be guilty of the offense and it would be your duty to acquit the Defendant.

"A request to charge must embody a correct, applicable and complete statement of law, legal and perfect in form and adjusted to the pleadings and evidence."[12] The defendants' requested charge was not a complete statement of the applicable law, as it failed to inform the

---

[10] Zhao, who did not speak English, was questioned through an interpreter.

[11] Barnett notes that Sean Roberson claimed he drove Zhao away to protect him from Jordan. Barnett does not, however, point to any evidence that this was his own motivation. In any event, the fact that a gun was held to Zhao's head inside the car, and that he was left for dead next to a tree, belies any claim of benevolent intent.

[12] (Punctuation omitted.) *Dill v. State*, 235 Ga. App. 265, 267 (2) (508 SE2d 739) (1998).

jury that

> [a] renunciation of criminal purpose is not voluntary and complete if it results from: (1) [a] belief that circumstances exist which increase the probability of detection or apprehension of the person or which render more difficult the accomplishment of the criminal purpose; or (2) [a] decision to postpone the criminal conduct until another time.[13]

Because the defendants' requested charge was not a complete statement of the applicable law, the trial judge did not err in refusing to give it.[14]

6. Defendants claim that the trial court erred by not giving their requested charge on theft by receiving stolen property. However, "[a] defendant is not entitled to an instruction on an offense for which he is not being tried, and which is not a lesser included offense of the one he is defending."[15] The defendants were not indicted for theft by receiving, and theft by receiving is not a lesser included offense of armed robbery.[16] The trial court thus did not err in refusing to give the charge.[17]

7. The trial court did not err, as defendants contend, by refusing to give their requested charge that "[p]resence at the scene of a crime, even when coupled with knowledge and approval not amounting to encouragement, is not sufficient to show that the Defendant is a party to a crime." Although the court did not charge this exact language, it instructed the jury that a person is a party to a crime only if the person

> a) directly commits the crime, or b) intentionally helps in the commission of the crime, or c) intentionally advises, encourages, hires, counsels or procures another to commit the crime, or d) intentionally causes some person to commit the crime under such circumstances that the other person is not

---

[13] OCGA § 16-4-5 (b). See generally *Smith v. State*, 157 Ga. App. 238, 239 (2) (276 SE2d 905) (1981) (indicating that charge on abandonment would be incomplete unless the court charged section of statute "defin[ing] when a renunciation of criminal purpose is not voluntary and complete").

[14] See *Young v. State*, 163 Ga. App. 507, 508 (3) (295 SE2d 175) (1982) (not error to refuse to give written request on defense of justification, where request was not complete statement of law); *McCane v. State*, 147 Ga. App. 730 (2) (250 SE2d 181) (1978); *Green v. State*, 240 Ga. App. 774, 777-778 (3) (525 SE2d 154) (1999). Defendants do not contend that renunciation of criminal purpose was their "sole defense," since their primary defense was that they did not participate in the crime at all. See *Willingham v. State*, 235 Ga. App. 475, 477 (2) (509 SE2d 744) (1998).

[15] *Belton v. State*, 270 Ga. 671, 675 (6) (512 SE2d 614) (1999).

[16] *Bethel v. State*, 232 Ga. App. 82, 84-85 (2) (500 SE2d 595) (1998).

[17] Id.

guilty of any crime either in fact, or because of a legal incapacity.

The court also charged that mere presence at the scene of a crime is not sufficient to authorize conviction "unless the evidence shows beyond a reasonable doubt that such person committed the alleged crime or helped in the actual perpetration of the crime or participated in the criminal endeavor as a party to a crime." Because the applicable principles were covered in the court's charge, the court did not err in refusing to charge the exact language requested by the defendants.[18]

8. The defendants argue that the trial court erred by not giving the following request to charge: "An accessory after the fact is not considered an accomplice to the underlying crime itself, but is guilty of a separate, substantive offense in [the] nature of obstruction of justice." Although this charge is correct as an abstract statement of the law,[19] the defendants were not charged with obstruction of justice, and the court fully instructed the jury on when a person may be considered a party to the crime. Accordingly, it was not error to refuse to give the requested charge.[20]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 23, 2000 ▮

*Robert L. Mack, Jr.*, for appellants.
*Robert E. Keller, District Attorney, Erman J. Tanjuatco, Assistant District Attorney*, for appellee.

---

[18] See *Wheeler v. State*, 236 Ga. App. 197, 199 (2) (511 SE2d 564) (1999).
[19] See *Moore v. State*, 240 Ga. 210, 212 (1) (240 SE2d 68) (1977).
[20] See *Klinect v. State*, 269 Ga. 570, 575 (9) (501 SE2d 810) (1998).