**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 9, 2013**

# In the Court of Appeals of Georgia

A13A0308. THOMAS v. THE STATE.

McFADDEN, Judge.

Davin Thomas appeals his robbery and misdemeanor obstruction convictions, arguing that he was entitled to a mistrial because of the improper admission of character evidence and that the evidence does not support his convictions. We conclude that Thomas was not entitled to a mistrial because the evidence did not impermissibly place his character in issue. We also hold that the evidence supports the robbery conviction. But we find insufficient evidence to support the obstruction conviction. We therefore affirm in part and reverse in part.

1. *Preservation of error*.

As an initial matter, we address the state's contention that Thomas waived the arguments he raises on appeal because he failed to raise them in his motion for new

trial. He did not. The state cites *Griffin v. State*, 230 Ga. 449, 452 (2) (197 SE2d 723) (1973), for the proposition that Thomas waived his argument regarding the allegedly improper admission of character evidence by failing to raise it in his motion for new trial. The defendant in *Griffin*, however, failed to raise his argument either in his motion for new trial or at trial. Here, on the other hand, Thomas moved for a mistrial after the admission of the testimony in question and renewed his motion after the trial court gave curative instructions. He thus preserved the issue. Cf. *Tarver v. State*, 186 Ga. App. 905, 906 (2) (368 SE2d 828) (1988) (defendant waived appellate review of argument regarding the admission of character evidence "because following the curative instruction by the trial court, defendant failed to renew the motion for mistrial").

We also reject the state's argument that Thomas waived his challenge to the sufficiency of the evidence to support the obstruction conviction. OCGA § 5-6-36 (a) provides that "entry of judgment on a verdict by the trial court constitutes an adjudication by the trial court as to the sufficiency of the evidence to sustain the verdict, affording a basis for review on appeal without further ruling by the trial court." Further, OCGA § 5-5-40 (g) provides that "[o]n appeal, a party shall not be limited to the grounds urged in the motion [for new trial] or any amendment thereof."

2

Moreover, Thomas did challenge the sufficiency of the evidence in his first motion for new trial, albeit in general terms. Thomas has waived none of his arguments.

2. *Sufficiency of the evidence.*

When a defendant challenges the sufficiency of the evidence supporting his criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). It is the function of the jury, not the reviewing court, to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld." (Citations and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

Viewed in this light, the evidence shows that Mihir Patel, the owner of Al's Discount Liquors, went to the bank one afternoon just before Christmas to get $28,000 cash for the check-cashing service he provided at his store. The money was in two bank bags, $22,000 in one and $6,000 in the other. Patel returned to his store

3

and, as he was entering, a man snatched the bag containing $22,000 from under his arm.

Shortly after the robbery, Patel described the robber to police as wearing light blue jeans, a gray sweater and a Christmas Santa hat. He recognized the robber as a customer and identified him in a photographic lineup (and eventually, at trial). Although Patel did not know the robber's name, he knew the nicknames of some of the robber's associates, and gave the nicknames to the police. One of the associates was known as Rock.

At the time of the robbery, Gregory Sublett was a patrol officer in the area in which the store was located and was familiar with a man called Rasheen Lovett, whose street name was Rock. Sublett learned that Rock's brother had cashed a check at Patel's store the day of the robbery. Sublett went to the brothers' residence to speak with them. While the uniformed officer was waiting, a man who closely matched Patel's description of the robber walked toward him. Sublett recognized the man as Thomas, whom he had seen at that location multiple times before. He called out, "Hey, come here for a second," or "Come here, sir, let me talk to you for a second," but Thomas turned and walked away. Thomas then began running and the officer started chasing him, but Thomas got away.

4

(a) *Robbery.*

OCGA § 16-8-40 (a) (3) provides that "[a] person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another . . .[b]y sudden snatching." "The victim's testimony alone[, including his identification of Thomas as the perpetrator,] established the essential elements of the offense[ of robbery]. . . . Based upon the evidence set forth above, [Thomas's robbery conviction was] authorized under the standard of *Jackson v. Virginia*[, supra]." (Citations omitted.) *Lester v. State*, 309 Ga. App. 1, 2 (1) (710 SE2d 161) (2011).

(b) *Obstruction.*

OCGA § 16-10-24 (a) provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." The indictment charged Thomas with obstruction for fleeing Sublett. The question is whether Thomas fled knowingly and willfully so as to hinder Sublett's discharge of his duties. And this depends on whether Sublett clearly commanded Thomas to stop – if the officer did not clearly communicate to Thomas that he was compelled to comply, then Thomas's failure to comply was not knowing and willful obstruction.

"[T]he [misdemeanor obstruction] statute was made purposefully broad to cover actions which might not be otherwise unlawful, but which obstructed or hindered law enforcement officers in carrying out their duties. This does not, however, make any actions which incidentally hinder an officer a crime; the accused must have 'knowingly and wilfully' obstructed or hindered the officer" *Hudson v. State*, 135 Ga. App. 739, 742 (218 SE2d 905) (1975)."Certainly the assertion of one's constitutional rights cannot be an obstruction of an officer, or every assertion of such rights would lead to obstruction charges." *Ballew v. State*, 245 Ga. App. 842, 843 (1) (538 SE2d 902) (2000), disapproved in part on other grounds, *Stryker v. State*, 297 Ga. App. 493, 495 n. 1 (677 SE2d 680) (2009). A person has a constitutional right to walk away from some encounters with police. That right is founded on the Fourth Amendment to the Constitution of the United States. See *Galindo-Eriza v. State*, 306 Ga. App. 19, 22-23 (1) (701 SE2d 516) (2010). For that reason, our case law recognizes that we must construe Georgia's obstruction statute in accordance with the U.S. Supreme Court's construction of the Fourth Amendment.

> The Supreme Court of the United States has construed the Fourth Amendment to the United States Constitution so as to set forth three tiers of police-citizen encounters. These encounters involve (1) communication between police and citizens involving no coercion or

6

detention, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.

(Citations and punctuation omitted.) *Ewumi v. State*, 315 Ga. App. 656, 658 (1) (727 SE2d 257) (2012). Therefore, when we analyze police-citizen encounters and determine whether defendants could lawfully leave those encounters, we follow *Terry v. Ohio*, 392 U.S. 1 (88 SCt 1868, 20 LEd2d 889) (1968). For example, in *State v. Dukes*, 279 Ga. App. 247, 249 (630 SE2d 847) (2006), we applied the *Terry* analysis for two purposes: to determine whether the officers were engaged in lawful duties and also to determine whether their initial encounter with the defendant was a second-tier or first-tier encounter from which the defendant could lawfully flee. See also *Black v. State*, 281 Ga. App. 40, 43-44 (635 SE2d 568) (2006) (police-citizen encounter was a first-tier encounter as "clearly indicated" by police's actions, so citizen could walk away and arrest for obstruction was not justified and could not support subsequent search).

Under this analysis, if the encounter between Thomas and Sublett was a first-tier encounter -- involving no detention but simply communication -- then Thomas

had the right to walk away. "[A] citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter. Even running from police during a first-tier encounter is wholly permissible." (Citations and punctuation omitted.) *Galindo-Eriza*, supra, 306 Ga. App. at 22-23 (1).

If the encounter between Thomas and the officer was a second-tier encounter -- involving a lawful attempt to seize Thomas briefly -- then Thomas could not lawfully flee. But to initiate second-tier encounters, officers must make themselves clear, as by giving an order or command. *Dukes*, supra, 279 Ga. App. at 247 (because "there [was] no evidence that the officers' presence was threatening, that any weapon was displayed, that any physical touching occurred or that any language indicated that defendant" was compelled to comply with the police requests, the initial contact between the officers and defendant did not amount to a seizure but was a first-tier encounter from which defendant could leave). See also, *Ewumi*, supra, 315 Ga. App. at 663 (1) (a) (when "officer did not explain to [defendant] that he wished to speak with him as part of a pending investigation, instead only asking that [defendant] come over to answer some questions," their encounter was a first-tier encounter which defendant "had every right to terminate."); *Black*, supra, 281 Ga. App. at 43-44 ("police simply approached [citizen] . . . and asked if they could 'talk to him for a

8

second,' none of which indicated [citizen] was not free to leave," so encounter was first tier and "whether or not the circumstances would have justified a second-tier detention [was] irrelevant and misleading"). Cf. *Peters v. State*, 242 Ga. App. 816, 817 (1) (531 SE2d 386) (2000) ("Because the officers verbally commanded [defendant] to stop and prevented him from entering his automobile," their encounter was a second-tier encounter.) (citation omitted). Compare *State v. Fisher*, 293 Ga. App. 228, 231 (666 SE2d 594) (2008) (given officer's testimony that at no point prior to defendant's arrest had he ordered defendant to stop, defendant "was at most simply running from a first-tier encounter.). This is because if an officer had not made clear to a defendant that the defendant was compelled to obey, the defendant's disobedience cannot have been knowing and wilful.

Here there was no evidence that Sublett "use[d] . . . language or tone of voice indicating compliance with the officer's request might be compelled." *Dukes*, supra, 279 Ga. App. at 249. Most requests are not commands. We recognized the distinction in *Ewumi*, supra, 315 Ga. App. at 660-661, 663 (1) (a). In that case, we concluded that there was "no probable cause to arrest for obstruction by flight when the flight was from a first-tier encounter that [Ewumi] had every right to terminate." That holding, while founded in part on our determination that the evidence was insufficient to

9

sustain a finding of a particularized and objective basis for suspicion, was "[a]dditionally" founded on our holding that "the officer did not explain to [defendant] that he wished to speak with him as part of a pending investigation, instead only asking that [defendant] come over to answer some questions." Id. at 663 (1) (a). The dissent's citation to *Crouch v. State*, 246 Ga. App. 106, 107 (2) (a) (539 SE2d 609) (2000), as support for the contention that Sublett's requests were a lawful command is unpersuasive. In *Crouch*, we did not set out the words used by the officers or the circumstances of their encounter with the defendant.

As detailed above, the officer here did have a particularized and objective basis for suspecting Thomas of criminal activity. Had he commanded Thomas to stop, the encounter would have been elevated to the second tier. But as there was no evidence of a command, we must conclude that the encounter was a first-tier encounter and therefore that Thomas did not knowingly obstruct the officer. See *Fisher*, supra, 293 Ga. App. at 231. "[B]y exercising his right to leave a first-tier encounter, as a matter of law, [Thomas] did not hinder or obstruct the officer's lawful discharge of his duties. . . ." *Ewumi*, supra, 315 Ga. App. at 663 (1) (a).

We agree with the dissent that the crucial issue is whether Sublett made it sufficiently clear to Thomas that compliance was mandatory. Contrary to the dissent

10

we decide that issue in light of the Fourth Amendment principles enunciated in *Terry*, and we hold that the evidence is insufficient.

As in *Porter v. State*, 224 Ga. App. 276 (480 SE2d 291) (1997),

the evidence shows only that [Thomas] fled at the sight of the police. While the officer[] gave chase, there simply is no evidence that [he], in a show of lawful authority, called out to the suspect[] to halt and that the defendant failed to submit to that lawful authority. Consequently, the evidence is not sufficient under the standard of *Jackson v. Virginia*, 443 U.S. 307, [] supra, to sustain defendant's misdemeanor conviction for obstruction of an officer. . . .

(Citation and punctuation omitted.) Id. at 280 (2).

The misdemeanor obstruction statute requires proof that a defendant's obstruction be knowing and willful. OCGA § 16-10-24 (a). Absent evidence of the officer's clear command to stop, there was no evidence that Thomas knowingly and willfully obstructed the officer by choosing not to comply with his request to "come here for a second." *Chaplin v. State*, 141 Ga. App. 788, 790 (2) (234 SE2d 330) (1977) (flight, or attempted flight, before a command to halt did not support conviction for obstruction of an officer). Cf. *In the Interest of E.G.*, 286 Ga. App. 137, 139 (2) (648 SE2d 699) (2007) (rejecting juvenile's claim that no evidence showed he had been told to stop and holding that "flight, or attempted flight, after a command

11

to halt constitutes obstruction of an officer within the meaning of OCGA § 16-10-24.") (citation and punctuation omitted.).

Sublett did not testify that he ordered Thomas to stop. The competent evidence introduced at trial established only that the officer said, "Hey, come here for a second," and "Come here, sir, let me talk to you for a second." Those are not commands. Those are requests. See *Ewumi*, supra, 315 Ga. App. at 663 (1) (a); *Black*, supra, 281 Ga. App. at 44. The assistant district attorney did ask questions that implied Sublett had commanded Thomas to stop. But those questions assumed a fact not in evidence,[1] and questions that assume facts not in evidence do not themselves constitute competent evidence. *State v. Gillette*, 236 Ga. App. 571, 573 (512 SE2d 399) (1999). Specifically, the attorney asked Sublett, "What happened when Davin Thomas was told to stop by you?" Sublett responded, "He turned around. He turned around and started walking away." The attorney later asked Sublett, "You're

---

[1]The assistant district attorney was clearly not attempting to mislead the jury. Rather his failure to introduce evidence of a lawful command appears to have been an oversight. Sublett's written report – which was not admitted into evidence – indicates that he, "in full uniform stated in a loud manner '**STOP**' and Thomas ran southbound from our location." (Emphasis in the original.) It appears that the assistant district attorney was under the misapprehension that he had elicited testimony in accord with that part of the report.

absolutely sure the person you did chase that ignored your order to stop was the gentleman seated at this table here?" and Sublett responded, "Hundred percent."

Contrary to the dissent we are not introducing a requirement that officers intone magic words. We have not prescribed any particular language, and we have reaffirmed the significance of other factors, such as the officer's tone of voice.

3.      *The admission of character evidence.*

In explaining how she compiled the photographic lineup, Detective Nicole Khaalis testified that when Sublett gave her the name of Thomas the day after the robbery, she "went to the Chatham County web site, Sheriff's Department web site --" Defense counsel immediately objected and moved for a mistrial on the ground that the reference to the sheriff's department placed Thomas's character into issue. The trial court instructed the jury to "disregard the last statement made by the witness about going to the Chatham County web site." He asked the jurors whether they could disregard the reference, and the jurors answered yes. Defense counsel renewed his motion for mistrial. The court again instructed the jurors to "disregard any statement previously made by this witness about going to a web site by the Sheriff's Department."

The reference to the sheriff's department did not place Thomas's character into evidence. "[A] mere reference to the fact that defendant's photograph was already in police records, without more, does not inject the defendant's character into evidence." *Harris v. State*, 191 Ga. App. 399 (381 SE2d 602) (1989). See also *Williams v. State*, 275 Ga. 622, 623 (2) (571 SE2d 385) (2002) (had defendant argued that his character was placed in evidence when top of photographic lineup display read "Clayton County Sheriff's Office," the argument would have had no merit).

And even if the reference had placed Thomas's character into issue, the trial court did not abuse its discretion in refusing to grant a mistrial. "[W]hether to grant a mistrial based upon improper character evidence rests within the trial court's discretion." (Citations omitted.) *Pearson v. State*, 277 Ga. 813, 816 (4) (596 SE2d 582) (2004). The reference to the sheriff's office

> appears to have been inadvertent and was not the result of improper questioning by the [s]tate. Furthermore, the trial court's curative instructions were promptly given and clearly informed the jury that it should disregard the improper testimony. Under these circumstances, we conclude that the trial court did not abuse its discretion by giving curative instructions, rather than declaring a mistrial.

*Dukes v. State*, 273 Ga. 890, 892-893 (3) (b) (548 SE2d 328) (2001). See also *Russell v. State*, 308 Ga. App. 328, 330 (707 SE2d 543) (2011) (holding that defendant was not entitled to a mistrial because of reference to his photograph being pulled from the website of the State Board of Pardons and Paroles, given that the reference was not purposefully elicited by the prosecutor, it did not identify any specific crime of which defendant had been convicted -- although it implied a prior conviction -- and trial court immediately gave a curative instruction).

Citing *Jackson v. State*, 302 Ga. App. 412 (691 SE2d 553) (2010), Thomas argues that the curative instructions were ineffective because they themselves referenced the sheriff's department. In *Jackson*, however, two witnesses testified that the defendant had been incarcerated, although they had been cautioned not to do so, and their references were not in passing. Id. at 414. Although we observed that the court twice had to instruct the jury to disregard the testimony, using the same language as the witnesses, that was only one factor upon which we relied in holding that the defendant was entitled to a mistrial. Here, the reference was in passing and it did not imply that Thomas previously had been convicted of a crime. Thomas has not shown that his character was placed into issue or that the trial court abused its discretion in denying his motion for a mistrial.

*Judgment affirmed in part and reversed in part. Phipps, C. J., Ellington, P.J., and Doyle, P. J., concur. Barnes, P. J., Boggs and Branch, JJ., concur in part and dissent in part.*

A13A0308. THOMAS v. THE STATE.

BOGGS, Judge, concurring in part and dissenting in part.

I fully concur in Divisions 1, 2 (a) and 3 of the majority opinion, but respectfully dissent to Division (2) (b) because I believe that sufficient evidence supports Thomas' misdemeanor obstruction conviction.

1. Pursuant to OCGA § 16-10-24 (a), "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." And, "[o]bstruction of the police in performing their lawful duty includes any act that directly interferes with, impedes, interrupts, prevents or perverts the public administration of justice." (Citation omitted.) *Panzner v. State*, 273 Ga. App. 868, 869 (616 SE2d 201) (2005). Refusing the lawful command of an officer will sustain a conviction under this statute. See, e. g., *Arsenault v. State*, 257 Ga. App. 456, 458 (1) (a) (571 SE2d 456) (2002). "Conduct constituting obstruction of law enforcement can include arguing with, refusing to cooperate with, lying to, or fleeing from police when they attempt to investigate or

prevent a crime or to effectuate an arrest." *Frasier v. State*, 295 Ga. App. 596, 599-600 (2) (b) (672 SE2d 668) (2009). Whether a defendant's "refusal to obey [a] police officer's commands 'had the effect of hindering or obstructing the officer [i]s for the trier of fact to decide.'" (Citations, punctuation and footnote omitted.) *Mayhew v. State*, 299 Ga. App. 313, 317 (1) (b) (682 SE2d 594) (2009).

In this case, the officer was authorized to conduct a second-tier *Terry* detention of Thomas based upon evidence that Thomas closely matched the description of the robber and was seen outside the home of a person known to associate with the robber a few hours later. See *Avery v. State*, 313 Ga. App. 259, 260 (721 SE2d 202) (2011). Based upon this particularized and objective basis to suspect that Thomas was involved in the robbery, the officer told Thomas, "Hey, come here for a second" or "Come here, sir, let me talk to you for a second." At the time the officer commanded Thomas to "come here," he was wearing his full police uniform, his badge was visible, his marked patrol car was parked nearby, and he was approximately six feet away from Thomas.

Simply because we have previously concluded that flight following a police officer's order to "stop" or "halt" supports an obstruction conviction[1] does not mean that the absence of these magic words in a police officer's command renders the evidence insufficient.[2] Instead, all that is necessary is "a verbal command within earshot." Cf. *Phillips v. State*, 269 Ga. App. 619, 632 (11) (604 SE2d 520) (2004). The word "come" is an imperative in the English language and is used to express a command. In this case, the officer's use of the imperative "come" as opposed to "stop" or "halt" was reasonable when we examine the context in which it was given. The defendant was walking *toward* the officer and was about six feet away when the officer ordered him to "come here," and the use of an alternative imperative such as "halt" or "stop" would not have been as apt a command for an officer seeking to speak with someone to investigate a crime. Additionally, we should not require an officer to use magic words during an unexpected encounter with a robbery suspect.

As we are required to construe the evidence in the light most favorable to the verdict, I would find that the jury was authorized to conclude from the evidence

---

[1] See, e.g., *In the Interest of E. C.*, 292 Ga. App. 798, 800 (665 SE2d 896) (2008); *Sprinkles v. State*, 227 Ga. App. 112, 113 (1) (488 SE2d 492) (1997).

[2] While the majority claims it is "not introducing a requirement that officers intone magic words," the practical effect of its approach will be exactly that.

3

presented that the police officer issued a lawful command to Thomas and that Thomas obstructed the police officer in the lawful discharge of his official duties by fleeing. See *Avery*, supra. I therefore would affirm Thomas' conviction for obstruction of a police officer. See *Couch v. State*, 246 Ga. App. 106, 107 (2) (a) (539 SE2d 609) (2000) (defendant's failure to come to door at "request"[3] of his probation officers and conduct in hiding in bushes outside sufficient to support obstruction conviction).

2. I also disagree with the majority's conclusion that the evidence was insufficient to support Thomas' misdemeanor obstruction conviction because this was a first-tier *Terry* encounter. .

> In a first-tier encounter, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. There is no threshold requirement and indeed the individual may refuse to answer or ignore the request and go on his way if he chooses, for this does not amount to any type of restraint and is not encompassed by the Fourth Amendment. So long as a reasonable person would feel

---

[3] As demonstrated by our opinion in *Couch*, the majority's attempt to draw a distinction between a request and an order is a distinction without a difference. See also *State v. Cauley*, 282 Ga. App. 191, 197 (2) (638 SE2d 351) (2006) (proper issue is whether compliance with request is required).

free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required.

(Citation, punctuation and footnote omitted.) *Thomas v. State*, 301 Ga. App. 198, 200 (1) (687 SE2d 203) (2009). Stated differently, "[a]n officer may . . . inquire about possible criminal or suspicious activity during a first-tier police-citizen encounter, without requiring articulable suspicion, "as long as the police do not convey a message that compliance with their requests is required." *State v. Cauley*, 282 Ga. App. 191, 197 (2) (638 SE2d 351) (2006). When reviewing a trial court's ruling on a motion to suppress, "[w]e will sustain a trial court's ruling that an encounter was a first-tier encounter so long as some evidence supports the facts underlying that determination." *Whitmore v. State*, 289 Ga. App. 107, 108-109 (657 SE2d 1) (2008). We review a jury's verdict of guilt under a similar any evidence standard. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

In this case, the jury could have concluded that the officer's command to "come here" would cause a reasonable person to believe that compliance was required. *Walker v. State*, 299 Ga. App. 788, 790 (1) (683 SE2d 867) (2009) (officer's command of "hey, hold on guys, come here, come here" required particularized and objective basis for suspecting criminal activity); *Odom v. State*, 304 Ga. App. 615,

5

620 (5) (697 SE2d 289) (2010) (order to "come here" and "stop" required particularized and objective basis for suspecting criminal activity). Compare *Owens v. State*,192 Ga. App. 671, 673 (1) (385 SE2d 671) (1989) (concluding encounter was first-tier based in part upon officer's failure to "summon defendant to their presence;" officer merely "walked up beside defendant and identified themselves as law enforcement officers").[4]

3. Finally, our opinions in *State v. Fisher*, 293 Ga. App. 228 (666 SE2d 594) (2008), *Porter v. State*, 224 Ga. App. 276 (480 SE2d 291) (1997), *Ewumi v. State*, 315 Ga. App. 656 (727 SE2d 257) (2012), and *State v. Dukes*, 279 Ga. App. 247 (630 SE2d 847) (2006), cited by the majority, do not require a different result. In both *Fisher* and *Porter*, the police officers said nothing to the defendants, who merely fled after seeing the officer. *Fisher*, supra, 293 Ga. App. at 231; *Porter*, supra, 224 Ga. App. at 279-280 (2). In *Ewumi*, a case addressing whether a motion to suppress should have been granted, we concluded that the police officer did *not* have "an

---

[4] The majority's reliance upon *Black v. State*, 281 Ga. App. 40 (635 SE2d 568) (2006), to conclude this case involves a first-tier encounter is misplaced. In *Black*, the police approached the defendant and "asked *if* they could talk to him for a second." Id. at 44 (1). The use of the word "if" does not indicate a command; the word "if" is a subordinate conjunction used to link independent and dependent clauses, not an imperative. Additionally, the officers *approached* the defendant instead of ordering the defendant to *come* to them.

6

objective, articulable suspicion of criminal activity to warrant a second-tier detention" and Ewumi acted within his rights to avoid a first-tier encounter. 315 Ga. App. at 660-661 (1) and 662-663 (1) (a). Consequently, any discussion in that case of the defendant's right to refuse the officer's request to speak with him is nonbinding dicta that should not be applied here. Finally, in *Dukes*, we also concluded that the defendant was entitled to flee from a first-tier encounter because the police lacked "reasonable suspicion of criminal activity needed for a second-tier detention prior to [the defendant]'s flight." 279 Ga. App. at 249-250. As in *Black*, supra, the encounter was first-tier because the police officers *approached* the defendant and asked numerous questions beginning with the word "if," indicating that compliance was not mandatory. Id. at 247-248.

For all of the above-stated reasons, I respectfully concur in part and dissent in part.

I am authorized to state that Presiding Judge Barnes and Judge Branch join in this writing.

7