A05A0284. KOONTZ v. THE STATE.
(617 SE2d 207)

ADAMS, Judge.

Jeffrey E. Koontz appeals following his conviction and sentence for driving without a license and driving under the influence of alcohol. He contends the trial court erred by failing to grant his motion to suppress the breath test results on the ground that the officer failed to accommodate his request for an independent test of his blood.

On appeal of a decision on a motion to suppress, "we construe the evidence in favor of the trial court's ruling, and the trial court's application of law to undisputed facts is subject to de novo review. [Cit.]" *Taylor v. State*, 263 Ga. App. 420, 422 (2) (587 SE2d 791) (2003). See also *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). Ultimately, this Court must ensure that there was a substantial basis

---

for the decision. *Sheehan v. State*, 267 Ga. App. 152, 154 (598 SE2d 873) (2004); *Hulsinger v. State*, 221 Ga. App. 274, 275 (470 SE2d 809) (1996).

At about 2:00 a.m. on August 2, 2002, Deputy James Williams of the Houston County Sheriff's Department saw Koontz fail to maintain his lane. Koontz then parked in a bank parking lot, and Williams followed and approached Koontz. Williams noticed that Koontz was unsteady on his feet and had blood-shot eyes, slurred speech, and a strong odor of alcohol. He was also driving without a license. Koontz said that he had had a total of about four beers over the course of a couple of hours. He then submitted to a series of field sobriety tests, following which he was arrested for driving under the influence of alcohol with a blood alcohol level of 0.08 grams or more and read the implied consent notice. Deputy Williams requested a breath test, and Koontz agreed. The test returned readings of 0.113 and 0.116.

Following the breath test, Koontz requested an independent blood test but he did not have any money on him. Williams offered to take him to the hospital or any qualified place of his choice, and Koontz said, "hospital." Williams took Koontz to an automated teller machine to get money and then to the Houston Medical Center where Williams knew from ten or twelve prior similar incidents that Koontz would only be able to have his blood drawn but not tested at 2:00 or 3:00 in the morning.

At the medical center, Koontz registered, paid, and had his blood drawn; then the sample was placed in a container, sealed, and given back to Koontz, who was then taken back to the sheriff's office and then the detention center. Koontz did not ask for any further assistance from Deputy Williams about getting the blood tested or storing it, nor did Williams offer any, but Williams testified that he did not know of any place that one could get blood tested at that hour. Williams had on other occasions held the sample for the person and taken it to a lab in Macon during business hours, and he testified that an accused can take the sealed sample to be tested or have him take it to be tested at a later date; but Koontz did not inquire about that nor did Williams offer. Moreover, the state did not introduce admissible evidence to show specifically whether and under what circumstances a blood sample can be stored and tested at a later time. Williams also testified that he has never taken anyone to two other nearby hospitals in an effort to accommodate a request for an independent blood test; however no evidence was presented to show that either hospital had a different policy. There is no evidence that Koontz ever got his sample tested or of what became of the sample. He did not testify at the hearing on the motion to suppress or at trial.

OCGA § 40-6-392 (a) (3) gives a person accused of driving under the influence a right to have an independent chemical "test or tests"

by a qualified person of his or her own choosing. The statute further provides that, "[t]he justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer." "The state has the burden of showing it complied with the requirements of OCGA § 40-6-392 (a) (3)." *Joel v. State*, 245 Ga. App. 750, 753 (538 SE2d 847) (2000). Thus it is incumbent on the trial court to determine, based on the totality of the circumstances, whether the failure or inability to obtain the independent test was justified, in other words, did the officer make a reasonable effort to accommodate the accused. *State v. Buffington*, 189 Ga. App. 800, 801 (377 SE2d 548) (1989).

Four cases from this Court have clarified the law regarding an officer's duty to accommodate a person who has requested an independent test when the independent test cannot be accomplished at the first facility visited. See *Cole v. State*, 263 Ga. App. 222 (587 SE2d 314) (2003); *Hulsinger v. State*, 221 Ga. App. 274; *State v. Button*, 206 Ga. App. 673 (426 SE2d 194) (1992); *O'Dell v. State*, 200 Ga. App. 655 (409 SE2d 54) (1991).

In *O'Dell v. State*, the officer unjustifiably refused O'Dell's repeated requests to call other hospitals after a nurse at the closest hospital indicated that the test obtained there would not be admissible in court. 200 Ga. App. at 655. We reversed the denial of a motion to suppress and held that a request for an independent test must be construed as one for a "legally admissible blood test." Id. Furthermore, the officer's innocent mistake in assuming that no other hospitals in the area could perform such a test was not relevant. Id. at 657.

In *State v. Button*, unbeknownst to the officer, the hospital he chose for the test had a policy of not performing blood alcohol tests. 206 Ga. App. at 674. This Court affirmed suppression of the breath test because the officer failed to offer any further assistance after the hospital drew Button's blood but refused to test it. Id. at 675. Again, the officer's innocent misunderstanding was not relevant. The Court held, "a blood sample is not the same as a legally admissible blood test, regardless of whether the blood sample could conceivably have been later used to obtain an independent test." Id. Accordingly, after the officer learned of the policy, "failure to take [Button] to another hospital for a legally admissible independent blood test . . . was not reasonable under all the circumstances," and this was true even though Button did not make any further requests for assistance. Id. at 674-675.

In *Hulsinger v. State*, the officer gave Hulsinger a phone and a phone book, and Hulsinger arranged a test at a nearby hospital. 221 Ga. App. at 274. But after the nurse drew his blood, she told Hulsinger

that he would have to contact his lawyer about having it tested. Id. at 274-275. The officer suggested that he contact his lawyer or a doctor, and he offered to store the sample for Hulsinger. Id. at 275. This Court affirmed denial of the motion to suppress on the grounds that, construed in favor of the trial court's decision, there was some evidence, although slight, that the officer had tried to help solve the problem encountered at the hospital. Id. at 276. Furthermore, Hulsinger did not produce evidence that a test could be performed anywhere nearby at that hour. Id.

Finally, in *Cole v. State*, after Cole had his blood drawn at the hospital nearest to his arrest, Houston Medical Center (the same hospital as in the present case), he was unable to have it tested immediately because the hospital lab was closed for Memorial Day. 263 Ga. App. at 223. This Court reversed the denial of the motion to suppress because the officer took no steps to help overcome this obstacle. Id. at 224. He did not call two other facilities in the county, did not suggest any alternatives, and made no other attempt to offer assistance. Id. Rather, he simply took the defendant back to jail and put his blood sample in the refrigerator. Id.

The state concedes that these cases require a reversal of the decision below. Although Deputy Williams helped Koontz get money and took him to the hospital, he knew that Koontz could not get his blood tested there at that time, and he took no additional steps whatsoever to assist Koontz. He saw the nurse give Koontz his blood sample, but he then took Koontz back to the jail. He did not suggest any alternatives, call other hospitals, or offer any other assistance. Also, there is nothing in the record to show that Koontz did not have enough money for another attempt, that the officer was pressed for time or otherwise prevented from trying again, that another attempt would be too long delayed, or that the other hospitals were too far away or similarly unavailable. See generally *O'Dell*, 200 Ga. App. at 656 (some factors to be considered).

The state therefore argues that the decisions in *Button, Hulsinger*, and *Cole* should be overruled because they place the entire burden on the officer to make certain the test is done, or, in the alternative, the cases should be modified to place some burden on the accused to help solve problems that develop. But, whether these cases have put all the burden on the officer is not before us. In this case, Deputy Williams helped create the problem that he then failed to help solve. Accordingly, he failed to reasonably accommodate Koontz's request for an independent test. The decision below must be reversed.

If Williams had told Koontz he could store and test his blood sample later, this might alter our conclusion. But it would require some evidence, possibly in the form of expert testimony, about the

circumstances under which a blood sample can be stored and tested later — a fact not found in any of the cases cited herein.

*Judgment reversed. Smith, P. J., and Ellington, J., concur.*

DECIDED JULY 8, 2005.

*Gregory W. Holt*, for appellant.

*Alan R. Tawse, Jr., Solicitor-General, Arthur J. Creque, Assistant Solicitor-General*, for appellee.