A08A2120. FOWLER v. THE STATE.
(670 SE2d 448)

ELLINGTON, Judge.

A Clarke County jury found Russell Fowler guilty of two counts of driving under the influence, OCGA § 40-6-391 (a) (1) (less safe)

and (a) (5) (per se); and failure to maintain a lane, OCGA § 40-6-48 (1). He appeals from the denial of his motion for new trial, contending the trial court erred in admitting certain evidence and in sentencing him on both counts of DUI. For the following reasons, we affirm in part and vacate in part, and remand the case for resentencing.

1. Fowler contends that the court erred in denying his motion to suppress the results of his blood alcohol test, arguing (a) that the State failed to reasonably accommodate his request for an independent breath test; and (b) that the officer improperly read him the implied consent notice before placing him under arrest.

> When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.

(Citation and punctuation omitted.) *Whittle v. State*, 282 Ga. App. 64, 66 (637 SE2d 800) (2006).

Viewed in this light, the evidence showed that Fowler was involved in a one-car accident in which he drove his minivan onto the sidewalk, where the van struck and broke a utility pole, causing major damage to the van. When an officer approached the van, he saw that Fowler's mouth was bleeding and Fowler had blood on the front of his shirt. Although Fowler had difficulty speaking, he told the officer that he thought his jaw was broken. While speaking to the officer, Fowler got out of the van, and the officer smelled a strong odor of an alcoholic beverage coming from Fowler. Paramedics arrived and put a cervical collar on Fowler, then helped him to an ambulance and placed him on a backboard. According to the officer, Fowler was stumbling and had difficulty keeping his balance while he walked. The officer spoke with Fowler in the ambulance and continued to smell the odor of an alcoholic beverage coming from Fowler. According to the officer, he believed at that time that Fowler had been a less safe driver as a consequence of consuming alcohol.

At the hospital, Fowler received x-rays and treatment for a fractured jaw. While Fowler was waiting for x-rays, the officer arrived at the hospital, read him the implied consent notice, and requested a blood test. Fowler consented to the blood test. When the officer received the blood test results about three months later, the officer took out a warrant to arrest Fowler for driving under the influence.

(a) Fowler contends that the officer failed to reasonably accommodate his request for an independent breath test.

> OCGA § 40-6-392 (a) (3) gives a person accused of driving under the influence a right to have an independent chemical "test or tests" by a qualified person of his or her own choosing. The statute further provides that, "[t]he justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer." The state has the burden of showing it complied with the requirements of OCGA § 40-6-392 (a) (3). Thus it is incumbent on the trial court to determine, based on the totality of the circumstances, whether the failure or inability to obtain the independent test was justified, in other words, did the officer make a reasonable effort to accommodate the accused.

(Citations and punctuation omitted.) *Koontz v. State*, 274 Ga. App. 248, 249-250 (617 SE2d 207) (2005).

The record shows that, during the motion to suppress hearing, the officer testified that he read Fowler the implied consent notice at the hospital and Fowler did not request an independent breath or blood test. At trial, however, the State played an audiotape recorded by the officer at the time he read the implied consent notice, and the tape revealed that Fowler had requested a breath test.[1] According to the trial transcript, Fowler asked for a breath test *instead of* a blood test, but he later agreed to the blood test and did not mention the breath test again.[2]

Even if Fowler was asking for an independent test, however, the officer testified that he believed that there was "no way" Fowler would have been able to successfully complete a breath test due to the severity of the injuries to his mouth and jaw. Further, Fowler was not in the custody of the officer, but was a patient of the hospital waiting for x-rays and treatment for a fractured jaw. As the trial court noted, it was reasonable in this situation for the officer to leave Fowler in the custody of the hospital as opposed to taking custody of him and transporting him, with an untreated broken jaw, to another

---

[1] Neither the recording of the request nor a transcript of the recording is in the record on appeal.

[2] Thus, it does not appear that Fowler requested an independent breath test *in addition* to the blood test requested by the officer. See *Brooks v. State*, 285 Ga. App. 624, 626-627 (647 SE2d 328) (2007) (holding that, in order to determine whether an accused has invoked his right to an independent chemical test, courts must not simply look at the semantics of the alleged request, but must consider all of the surrounding circumstances to determine whether a statement could reasonably be construed "to be an expression of a desire for an additional, independent chemical test") (footnote omitted).

location for a breath test, thereby disrupting his medical treatment and risking further injury.

Under the totality of the circumstances, we conclude that the trial court did not err in finding that the officer's failure to assist Fowler in obtaining a breath test was justified. Thus, the trial court did not err in denying Fowler's motion to suppress on this basis.

(b) Fowler contends that the results of his blood alcohol test were inadmissible because the officer improperly read him the implied consent notice *before* placing him under arrest. This contention lacks merit.

> [I]f a person has been involved in a traffic accident resulting in serious injury or death and the investigating officer has probable cause to believe the person was driving under the influence of alcohol or other drugs, the State may require that person to submit to a blood test without first arresting the person. . . . OCGA § 40-5-55 (c) defines a "traffic accident resulting in serious injuries or fatalities" as "any motor vehicle accident in which a person was killed or in which one or more persons suffered a fractured bone, severe burns, disfigurement, dismemberment, partial or total loss of sight or hearing, or loss of consciousness."

(Footnote omitted.) *State v. Umbach*, 284 Ga. App. 240, 241 (643 SE2d 758) (2007).

In this case, given the facts outlined above concerning the accident and Fowler's fractured jaw, the trial court properly concluded that Fowler was involved in a "traffic accident resulting in serious injury" under OCGA § 40-5-55 (c). Further, given the officer's observations of Fowler at the scene of the accident, the court did not err in finding that the officer had probable cause to believe that Fowler was under the influence of alcohol to the extent that it was less safe for him to drive. Thus, the trial court did not err in denying Fowler's motion to suppress on this basis. See *Hannah v. State*, 280 Ga. App. 230, 232-234 (1) (633 SE2d 800) (2006) (the court properly denied Hannah's motion to suppress when Hannah was involved in an accident involving serious injuries, there was probable cause to believe he was under the influence of alcohol, and a formal arrest prior to reading the implied consent notice was not warranted because Hannah was receiving medical care for his injuries).

2. Fowler argues that the court abused its discretion in admitting the blood test results because the State failed to present any expert testimony at trial regarding the results. Pretermitting whether the State was *required* to present an expert witness to testify about blood test results in this case, the evidence actually

presented by the State in this case supports a finding that the court did not abuse its discretion in admitting the test results.

> To qualify as an expert[,] generally all that is required is that a person must have been educated in a particular skill or profession: his [or her] special knowledge may be derived from experience as well as study. It is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular area to be deemed an expert.

(Citations and punctuation omitted.) *Morrow v. State*, 230 Ga. App. 137, 140-141 (3) (b) (495 SE2d 609) (1998). Further, although a formal tender of an expert witness is preferred for the sake of clarity, the lack of a formal tender is not fatal as long as the opposing party had the opportunity to cross-examine the expert about his or her credentials and testimony. Id. at 140 (3) (a).

In this case, the State presented the testimony of the forensic toxicologist who tested Fowler's blood. She testified that she had a permit from the Georgia Bureau of Investigation to perform chemical analyses of blood specimens received from the police.[3] After testing Fowler's blood, she generated a report which contained Fowler's blood alcohol level. When the State asked her what the report stated about Fowler's blood alcohol level, Fowler objected on the basis that the witness was not an expert and, therefore, was not qualified to interpret the test results and explain them to the jury.[4] The court overruled the objection, and allowed the witness to testify that Fowler's blood test results showed that he had a blood alcohol concentration of 0.118 grams. The State also tendered the report into evidence. Fowler subsequently had the opportunity to cross-examine the witness about her credentials and her testimony.

Under these circumstances, the trial court did not abuse its discretion in admitting the blood test results. *Morrow v. State*, 230 Ga. App. at 140-141 (3) (b).

3. Fowler contends the court erred in sentencing him for both counts of driving under the influence. We agree.

> OCGA § 40-6-391 (a) establishes a single crime of driving in a prohibited condition and subsections (1) through (5) merely define different ways of committing that one crime. [Fowler] was prosecuted for violating OCGA § 40-6-391 (a)

---

[3] The court admitted the permit into evidence without objection.

[4] Fowler also objected on the basis that the officer had failed to reasonably accommodate his request for an independent test. See Division 1 (a), supra.

(1) and (a) (5) and was found guilty of both violations, but could only be convicted and sentenced for one DUI violation. . . . [Thus, i]mposing separate sentences for each offense was improper.

(Footnotes omitted.) *Partridge v. State*, 266 Ga. App. 305, 306 (596 SE2d 778) (2004). Because Fowler's conviction based on conduct violating OCGA § 40-6-391 (a) (5) (driving with a prohibited blood alcohol level) poses the more serious risk of injury to property or the public, we affirm that conviction and reverse Fowler's conviction under OCGA § 40-6-391 (a) (1) (less safe). Id. We vacate the sentences imposed for both offenses and remand only for resentencing for the violation of OCGA § 40-6-391 (a) (5).

4. Fowler's remaining argument is deemed waived because he failed to raise an objection on that basis to the alleged error during sentencing. *Prather v. State*, 259 Ga. App. 441, 445 (6) (576 SE2d 904) (2003).

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. Blackburn, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 4, 2008 —
RECONSIDERATION DENIED NOVEMBER 26, 2008 — 

*Benjamin A. Pearlman*, for appellant.
*Carroll R. Chisholm, Jr., Solicitor-General*, for appellee.