A10A1552. IN THE INTEREST OF J. D., a child.

(699 SE2d 827)

MIKELL, Judge.

The Juvenile Court of Chatham County adjudicated 16-year-old J. D. delinquent for acts, which if committed by an adult, would have constituted burglary, possession of a weapon during the commission of a crime, carrying a concealed weapon, and possession of a pistol by a minor. J. D. appeals, contending that the evidence was insufficient to support the adjudications for burglary and possession of a weapon during the commission of a crime and that the trial court erred in qualifying the investigating officer as an expert witness. We disagree and affirm.

> When reviewing the sufficiency of evidence supporting a juvenile court's adjudication, we apply the same standard of review used in criminal cases. We construe the evidence in favor of the court's adjudication and determine if a rational trier of fact could have found beyond a reasonable doubt that the juvenile committed the acts charged.[1]

So construed, the evidence shows that on the evening of December 4, 2009, Gloria Steele was alone at her home in the Fred Wessels housing project when she heard a noise in the kitchen. When Steele entered the kitchen she observed a small male, wearing a green and black Army fatigue jacket, climbing through the window. The person commanded Steele to "Get down," and she immediately ran out the front door and called 911 on her cell phone. Officer Kevin McCoon responded to the apartment three minutes later and observed that the kitchen window and front and back doors were open. McCoon noticed muddy footprints leading from the kitchen window to the back door. When Steele returned to the apartment with another officer, she noticed that her daughter's purse was missing and that there were muddy footprints on the kitchen floor. Steele told McCoon that the floor had been clean and that the muddy footprints came from the perpetrator. Once McCoon got a description of the perpetrator from Steele, he put out a "be on the lookout" alert.

McCoon testified that the weather was bad and that very few people were out walking around. Five minutes later, and thirteen minutes after Steele had called 911, Officer Adam Willis stopped two males including J. D., who was wearing an Army-style camouflage jacket. J. D. told Willis that he was on his way to see a girl on Waters

---

[1] (Punctuation and footnote omitted.) *In the Interest of R. S.*, 295 Ga. App. 772 (673 SE2d 280) (2009). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Drive. Willis alerted McCoon, who arrived on the scene. When McCoon compared J. D.'s shoes to the muddy footprints he determined that "they appeared to match in both tread pattern as well as size of the footprints." Before placing J. D. in the patrol car to transport him to the scene, McCoon asked him if he had a gun. J. D. denied having a gun. McCoon patted him down and discovered a loaded pistol in the right pocket of his jacket. When McCoon asked J. D. why he was outside, J. D. told McCoon that he was coming from the area of Paul Court, which is in the vicinity of Steele's home. Willis testified that J. D. was calm and pleasant but that when McCoon arrived, he became nervous and agitated, began fidgeting, and kept his arms "in very close proximity to his waistline."

Nikki Johnson testified that J. D. came to her house on Paul Court at approximately 5:00 p.m. and that he left sometime between 7:30 and 8:00 p.m. J. D. testified that he left Johnson's home around 8:00 p.m. and was on his way to his girlfriend's house when he was stopped by the police, approximately ten to fifteen feet from Johnson's home. J. D. admitted carrying a loaded pistol and testified that he lied to officers because he was scared. J. D. further explained that he had been carrying the gun because he wanted to scare students at school who had jumped him and threatened him with a gun. He also testified that he has had the same job for over two years, making approximately $500 a month.

1. J. D. contends the evidence was insufficient to support the juvenile court's adjudications for burglary and possession of a weapon during the commission of a crime because it was entirely circumstantial and failed to exclude every reasonable hypothesis other than his guilt. In this regard, J. D. points out that McCoon's footprint analysis was deficient; that Steele never saw the perpetrator and could not positively identify the jacket worn by him as the jacket worn by the perpetrator; that J. D. was stopped more than 15 minutes after the burglary in a separate housing project; that J. D. was not carrying anything belonging to Steele when he was stopped; and that J. D. provided to officers a credible reason for being in the Hitch Village housing project, adjacent to — but not in the immediate vicinity of — the Fred Wessels housing project.

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[2] "However, circumstantial evidence must only exclude reasonable hypotheses; it need not exclude every inference or hypothesis except that of the defendant's guilt. Under this rule,

---

[2] OCGA § 24-4-6.

the [s]tate is not required to remove every possibility of innocence of the crime charged."[3] Moreover, whether a hypothesis is reasonable is a question for the factfinder, here the juvenile court.[4]

In this case, the circumstantial evidence was sufficient for the factfinder to determine beyond a reasonable doubt that J. D. committed the offenses charged. He was in the vicinity of Steele's apartment shortly after the burglary, wearing a jacket that matched Steele's description of the jacket worn by the perpetrator, carrying a loaded pistol, and wearing shoes that matched the tread pattern and size of the muddy footprints found in Steele's apartment. McCoon testified that the streets were empty because of the weather, and Willis testified that J. D. and his companion were the only two individuals on the street at the time they were stopped, 13 minutes after Steele called 911. Willis also testified that J. D. became nervous and agitated when McCoon arrived on the scene. It was reasonable for the factfinder to find that J. D. committed the offense of burglary when he entered Steele's home "without authority and with the intent to commit a felony or theft therein"[5] and that he possessed a firearm at the time he committed the burglary.[6]

2. J. D. contends that the trial court erred in qualifying McCoon as an expert witness because he admittedly had no specialized training in forensics or shoe print comparison. During the adjudication hearing, McCoon testified that he has been a Savannah police officer for five years, has investigated "hundreds if not thousands" of crimes, and has participated in numerous training programs, including instruction by forensic officers about crime scene preservation and observation skills. McCoon testified that he did not have specialized training in shoe print matching but that he has handled other cases involving shoe print matching. He did not believe specialized training was needed to compare the shoe prints in this case. The juvenile court qualified McCoon as an expert witness in the area of "observation and investigation of physical evidence."

"In criminal cases, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other

---

[3] (Citations omitted.) *In the Interest of A. D. C.*, 228 Ga. App. 829, 830 (493 SE2d 38) (1997).

[4] See *In the Interest of R. J. S.*, 277 Ga. App. 74, 75 (625 SE2d 485) (2005); *Baysinger v. State*, 257 Ga. App. 273, 274 (2) (570 SE2d 593) (2002).

[5] OCGA § 16-7-1 (a).

[6] OCGA § 16-11-106 (b) ("[a]ny person who shall have on or within arm's reach of his or her person a firearm or a knife having a blade of three or more inches in length during the commission of, or the attempt to commit: . . . (2) The unlawful entry into a building or vehicle . . . and which crime is a felony, commits a felony").

witnesses."[7]

> To qualify as an expert, generally all that is required is that a person must have been educated in a particular skill or profession: his or her special knowledge may be derived from experience as well as study. It is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular area to be deemed an expert.[8]

We find that the juvenile court did not abuse its discretion in determining that McCoon possessed the requisite skill and experience to testify as an expert.[9] The evidence showed that McCoon was an experienced officer, had investigated thousands of crimes, was trained in crime scene observation, and had handled other cases involving shoe print matching.

Additionally, we find no merit in J. D.'s contention that the juvenile court erred in prohibiting defense counsel from asking McCoon how many shoe print comparisons he had actually performed. McCoon was qualified as an expert on the first day of the adjudication hearing. The adjudication hearing was continued to a second day, at which time defense counsel recalled McCoon and attempted to ask him how many shoe print comparisons he had performed. The juvenile court indicated to counsel that she would not rehash the same evidence. Given McCoon's testimony on the first day of the hearing that he had handled other cases involving shoe print matching and the fact that the court already had qualified him as an expert witness, we find no error in the court's ruling.[10]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

---

[7] OCGA § 24-9-67.

[8] (Citation and punctuation omitted.) *Fowler v. State*, 294 Ga. App. 864, 868 (2) (670 SE2d 448) (2008).

[9] See, e.g., *Rank v. State*, 179 Ga. App. 28, 30 (3) (345 SE2d 75) (1986) (trial court did not abuse its discretion in qualifying two officers as experts on accident reconstruction where evidence showed that they had more than twenty years combined experience with the Georgia State Patrol, had special training in accident investigation, and had investigated several hundred traffic accidents). See generally *Belton v. State*, 270 Ga. 671, 673-674 (4) (512 SE2d 614) (1999) (shoe print comparison is a matter "not of science but of skill and experience") (citations omitted).

[10] See, e.g., *Craft v. State*, 254 Ga. App. 511, 513 (3) (563 SE2d 472) (2002) ("[w]hile the right to a cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him (OCGA § 24-9-64), . . . the scope of the cross-examination rests largely within the discretion of the trial judge, to control this right within reasonable bounds, and his discretion will not be controlled by a reviewing court unless it is abused") (citation, punctuation and footnote omitted).

DECIDED AUGUST 4, 2010.

*Jill E. Roth*, for appellant.
*Larry Chisolm, District Attorney, Diane M. McLeod, Assistant District Attorney*, for appellee.