706 S.E.2d 101 (2011)
In the Interest of T.C.S., a child.
No. A10A1649.
Court of Appeals of Georgia.
February 3, 2011.
Kathryn A. Parker, for appellant.
Robert W. Lavender, District Attorney, Martin L. Melton III, Assistant District Attorney, for appellee.
DOYLE, Judge.
On February 17, 2009, the Oglethorpe County Juvenile Court adjudicated 17-year-old T.C.S. delinquent for acts that if committed by an adult would have constituted the offense of aggravated assault.[1] T.C.S. appeals, challenging the sufficiency of the evidence and arguing that the trial court erred by failing to make written findings of fact as required by OCGA § 15-11-63(b) before placing him in restrictive custody. Although sufficient evidence supports T.C.S.'s delinquency adjudication, we vacate the judgment and remand this case for the juvenile court to *102 make the specific written findings of fact required by OCGA § 15-11-63(b).
In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we view the evidence in favor of the juvenile court's finding, determining only if a reasonable trier of fact could have found beyond a reasonable doubt that the juvenile committed the acts charged.[2]
Viewed in this light, the evidence shows that in September 2007, T.C.S. and several others, including Kimberly Morgan, went to the home of Amanda Simpson and James Mulkey. While there, T.C.S. noticed that Mulkey, who ran a pawn shop, had a bag containing money and jewelry. Afterward, T.C.S. told Simpson that he would rob Mulkey, and Morgan overheard the comment.[3] During the visit, Mulkey and Simpson both noticed that T.C.S. repeatedly referred to others as "dog" when speaking to them.
Four or five days later, Simpson and Mulkey were awakened at 2:30 a.m. by the sound of someone knocking on their door. Mulkey retrieved his gun, and they both went to the door. When Mulkey opened the door, a man told them that he had car trouble and asked to borrow jumper cables. Mulkey declined and told the man to go somewhere else for assistance. A second man, who was dressed in black, wore a ski mask, and had a noticeable limp, jumped out from behind the deck and told the first man, "Get the door, dog." The second man then fired a gun towards the door, and Mulkey slammed the door and fired through the glass; no one was injured.
Simpson and Mulkey, gave statements to the police immediately after the incident, and neither indicated that they could identify the assailants. The police recovered shotgun wadding and pellets in the exterior of the house, which evidence indicated that the assailant had fired a .410 shotgun toward the victims. The following day, the victims identified the shooter as T.C.S. based on his voice, his use of the term "dog," and his limp.
Several days after the incident, T.C.S. spoke to Kimberly Morgan and denied that he committed the crime. He stated, however, that he knew who "was at [Simpson's] door" and admitted that he had a .410 gun under his bed, which "would look bad to the cops." According to Morgan, she had seen a sawed-off shotgun in a green duffel bag under T.C.S.'s bed on a prior occasion. Several days later, T.C.S. told Morgan that he "wanted to clear his conscience and then [told her] that he was the one that shot at [Simpson].... He ... wanted to talk to [Simpson] and apologize to her."
At trial, both Simpson and Mulkey identified T.C.S. as the shooter. T.C.S. testified, stating that he was at his mother's home with his girlfriend on the night of the assault. T.C.S.'s mother confirmed that T.C.S. was at her home the night of the incident.
1. T.C.S. argues that the evidence was insufficient to support his delinquency adjudication, arguing that the State's evidence was "primarily" circumstantial and that it failed to exclude the possibility that T.C.S. was at home at the time of the crime.
To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused. However, circumstantial evidence must only exclude reasonable hypotheses; it need not exclude every inference or hypothesis except that of the defendant's guilt. Under this rule, the [S]tate is not required to remove every possibility of innocence of the crime charged. Moreover, whether a hypothesis is reasonable is a question for the factfinder, here the juvenile court.[4]
Notwithstanding T.C.S.'s argument to the contrary, the State presented both direct and circumstantial evidence, including the testimony of Morgan, Simpson, and Mulkey, and *103 we conclude that the evidence was sufficient to support T.C.S.'s delinquency adjudication based on aggravated assault.[5]
2. T.C.S. further alleges that the juvenile court erred by failing to make appropriate written factual findings necessary to confine him to restrictive custody pursuant to OCGA § 15-11-63(b).
OCGA § 15-11-63(b) requires that when a child is found to have committed a designated felony act, the disposition order must include a finding based upon a preponderance of the evidence as to whether the child requires restrictive custody. The five elements the juvenile court must consider are:
(1) [t]he needs and best interests of the child; (2)[t]he record and background of the child; (3)[t]he nature and circumstances of the offense, including whether any injury involved was inflicted by the child or another participant; (4)[t]he need for protection of the community; and (5)[t]he age and physical condition of the victim.[6]
"Under this statute, the court must make specific written findings of fact regarding each factor. These findings not only provide a meaningful legal road map for the lower court in exercising discretion in effecting a fundamentally fair case disposition, but also assist the appellate court in its review of the merits of an appeal."[7]
Here, the juvenile court's disposition order contained no findings regarding the five elements. Thus, we remand this case to the trial court for specific findings of fact as to each of the five elements set forth in OCGA § 15-11-63(c) as they relate to T.C.S.[8]
Judgment affirmed in part and case remanded.
ELLINGTON, C.J., and ANDREWS, J., concur.
NOTES
[1] OCGA § 16-5-21(a)(2).
[2] (Punctuation omitted.) In the Interest of C.B., 288 Ga.App. 752, 655 S.E.2d 342 (2007), citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[3] According to Simpson, she thought at the time that T.C.S.'s threat was "just trash talk."
[4] (Punctuation and footnotes omitted.) In the Interest of J.D., 305 Ga.App. 519, 520-521(1), 699 S.E.2d 827 (2010).
[5] See OCGA § 16-5-21(a)(2); In the Interest of D.B., 305 Ga.App. 338, 339, 699 S.E.2d 772 (2010).
[6] OCGA § 15-11-63(c).
[7] (Citations and punctuation omitted.) In the Interest of M.D.L., 271 Ga.App. 738, 742(3), 610 S.E.2d 687 (2005).
[8] See id.