**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 4, 2016**

# In the Court of Appeals of Georgia

A16A1004. ROWAN v. THE STATE.

MERCIER, Judge.

Following the denial of his motion for new trial, Richard Dean Rowan appeals his conviction in the Superior Court of Jackson County for forgery in the first degree and the judgment and sentence entered thereon. The accusation in this case (based on the version of OCGA § 16-9-1 in effect in February 2010) alleged that Rowan "did knowingly, with intent to defraud, possess a certain writing to wit: a Contractor License Application, in such a manner that the writing as made purports to have been made by Vernon Luken, who did not give such authority, and did utter said writing." He contends on appeal that the evidence at trial was insufficient to prove his guilt beyond a reasonable doubt, and that the State failed to prove venue beyond a reasonable doubt. For the reasons that follow, we affirm.

1. Rowan contends that the evidence was insufficient to prove his guilt beyond a reasonable doubt, specifically because there was no evidence that he intended to defraud anyone and no evidence that he knew or should have known that the signature on the application was not Luken's. We disagree.

As a threshold matter, we address the State's suggestion that because Rowan did not argue this issue before the trial court in connection with his motion for new trial, it is not properly before this Court. "The entry of judgment on a verdict by the trial court constitutes an adjudication by the trial court as to the sufficiency of the evidence to sustain the verdict, affording a basis for review on appeal without further ruling by the trial court." OCGA § 5-6-36 (a). "On appeal, a party shall not be limited to the grounds urged in the motion [for new trial] or any amendment thereof." OCGA § 5-5-40 (g). Issues regarding sufficiency of the evidence to support Rowan's conviction were therefore preserved for review by the trial court's entry of a judgment of conviction in this case, and it is proper for us to address this enumeration of error. *Thomas v. State*, 322 Ga. App. 734 (1) (746 SE2d 216) (2013).

When examining the sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and do not weigh the evidence or determine witness credibility; we determine whether a

2

rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of the charged offense. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). "Although the intent of the accused to defraud has been characterized as the essence of the crime of forgery and must be established by proof beyond a reasonable doubt, both intent to defraud and knowledge may be proven by direct and/or circumstantial evidence." *Johnson v. State*, 211 Ga. App. 151, 152 (438 SE2d 657) (1993) (citations omitted). "Knowingly passing as genuine a forged instrument is evidence of the intent to defraud." *Heard v. State*, 181 Ga. App. 803 (1) (354 SE2d 11) (1987) (citations omitted).

The evidence at trial, viewed in the light most favorable to the guilty verdict, showed the following. Rowan and Luken were partners in a fire sprinkler company. Luken was a certified fire protection engineer and his credentials enabled him to obtain licenses to conduct business in several states; when he and Rowan formed a partnership business, Southern States Sprinkler Company ("SSSC"), Luken transferred his licenses to the business. Rowan had management and installation experience. SSSC was dissolved in about November 2010.

Rowan and Luken never discussed becoming licensed to conduct business in Maryland. However, "near the end of [their] business relationship, and after being

told by third parties that SSSC was doing work in states where he normally did not conduct business, Luken discovered that SSSC had been licensed in Maryland based on a license application that had been submitted to that state purportedly bearing his signature. Luken had never given Rowan permission to sign his name, and Luken had not signed the application. Luken discovered that a vehicle owned by SSSC was involved in a traffic accident in Maryland , and also discovered other irregularities in the business that "didn't seem right."

Luken filed a report in Georgia with the Jackson County Sheriff's Office alleging that Rowan had forged documents in order to profit outside of the business, and the Sheriff's Office conducted an investigation. When questioned, Rowan at first told the investigator that he had signed the Maryland license application with Luken's permission, and that in the routine course of business, Rowan and Luken signed each others' names; Rowan later said that Luken had signed the application himself. Rowan submitted to the investigator e-mails between himself and Luken which appeared to discuss the status of the Maryland license, as proof that Luken knew about the application. However, the investigator determined that the content and the dates of the messages had been altered, and Luken identified the e-mails as being from a chain of communication between himself and Rowan regarding a South

4

Carolina license. The state abbreviation "SC" (South Carolina) had been replaced by the state abbreviation "MD" (Maryland) in the e-mails before they were submitted to the investigator.

The evidence showed that on February 24, 2010, before submitting the application to the State of Maryland, Rowan took it to the home of his neighbor Rebecca Davis, a notary public. Davis testified that her home was located in Jackson County. Rowan presented the signed application to Davis and told her that Luken had signed it, and she notarized the signature. At trial Davis identified the Maryland license application that she notarized for Rowan, and identified her notary stamp on the application, which shows that she was a notary public in Jackson County, Georgia.

This evidence was sufficient to support Rowan's conviction for forgery in the first degree. First, contrary to Rowan's assertions, there is sufficient evidence that he knew that the signature on the Maryland license application was not Luken's, including his conflicting stories to the investigator about the signature. Notably, the evidence also demonstrates that Rowan attempted to demonstrate Luken's knowledge of the application (and prove that Rowan did not sign the application without permission) by altering other documents (the e-mails) and presenting them to the

investigator as genuine. Rowan essentially argues that the State did not prove that a third party had not signed the application, and suggests that another person employed at SSSC could have signed Luken's name; he also argues that the State offered no proof that Rowan sent, or directed the sending of, the application to Maryland. This argument is unavailing. "To support the verdict, circumstantial evidence must only exclude reasonable hypotheses; it need not exclude every inference or hypothesis except that of defendant's guilt." *Johnson*, supra. Based on Rowan's representations to the investigator and the falsified e-mails, a reasonable fact finder would be justified in excluding the hypothesis that another person signed the application without Luken's knowledge.

There is also sufficient evidence from which a reasonable fact finder could draw the inference that Rowan intended to defraud Luken, SSSC, or both. The testimony at trial sufficiently demonstrated that Rowan knowingly passed a forged document as genuine, which is evidence of the intent to defraud. *Heard*, supra. Additionally, however, there is evidence that Rowan pursued completion of the application without any prior conversation with Luken about licensing SSSC in Maryland, and that Luken only incidentally learned that SSSC was doing business in

6

Maryland, from a source other than Rowan, his business partner. "An intent to defraud, coupled with the possession of an altered writing and delivery thereof, is sufficient to prove forgery in the first degree." *Tucker v. State*, 283 Ga. App. 428, 430 (641 SE2d 653) (2007) (citation omitted). For the reasons discussed in Division 2 herein, there is sufficient evidence of the delivery of the application.

We conclude that there was sufficient evidence from which the jury could have found that Rowan acted with the intent to defraud and that he knew that the signature on the application was not Luken's, and that the jury rationally could have found beyond a reasonable doubt that the evidence excluded every reasonable hypothesis except that of Rowan's guilt. *Johnson,* supra.

2. Rowan also contends that the State failed to prove venue beyond a reasonable doubt. As the State points out, Rowan's argument is slightly different than this enumeration of error suggests. Rowan does not argue that the State failed to prove that his presentation of the application to Davis for notarization occurred in Jackson County, Georgia; rather, he argues that the "act of requesting that a notary sign a document cannot meet the definition of uttering," and that the completed offense of forgery did not take place until the license application was submitted to the State of Maryland, precluding venue from lying in Jackson County, Georgia. The

7

question presented is, therefore, whether Rowan's conduct in Jackson County satisfied the element of utterance under OCGA § 16-9-1. This is a question of law, which we review de novo. See *Hobbs v. State*, 334 Ga. App. 241, 244 (3) (779 SE2d 15) (2015).

We agree with the trial court and the State that Rowan's presentation of the forged application to the notary public constituted an utterance. It is well-established that "[a] check may be uttered by offering directly or indirectly, by words or actions, such document as good," and that "[a]n offer to pass a check to another person as a genuine instrument constitutes 'uttering.'" *Warren v. State*, 309 Ga. App. 596, 597 (2) (711 SE2d 108) (2011) (citation and punctuation omitted); *Hudson v. State*, 188 Ga. App. 684, 689 (2) (374 SE2d 212) (1988). "To utter and publish a document is to offer directly or indirectly, by words or actions, such document as good." *Walker v. State*, 127 Ga. 48, 49-50 (56 SE 113) (1906) (citation omitted) (applying previous version of forgery statute).

Here, Rowan presented to the notary public the license application with the signature purporting to be Luken's, and in order to obtain her notarization of the signature, offered it to her directly and by his words as good, when he told her that the signature was Luken's. *Warren*, supra. Therefore, although we agree with Rowan

8

that forgery in the first degree is not complete until a document is delivered, we disagree that the offense is not complete until it is used for a single, ultimate improper purpose. While delivering the application to Maryland in order to obtain the license would also be an utterance, this does not preclude the presentation of the document to another party in furtherance of an improper purpose from constituting an utterance as well. We find that when Rowan presented the signed document to the notary, offering it as good in order to elicit her notarization, he uttered the document. The trial court did not err in denying his motion for new trial on this basis, and the jury was authorized to find that the evidence was sufficient to establish venue beyond a reasonable doubt. *Short*, supra.

*Judgment affirmed. Ellington, P. J., and Branch, J., concur*.