**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 29, 2018**

# In the Court of Appeals of Georgia

A18A0764. CANELAS v. THE STATE.

ELLINGTON, Presiding Judge.

Following a bench trial, the State Court of Gwinnett County found Roger Canelas guilty of driving under the influence of alcohol to the extent it was less safe to drive, OCGA § 40-6-391 (a) (1); driving while having an alcohol concentration of 0.08 grams or more (DUI per se), OCGA § 40-6-391 (a) (5); and driving without a valid driver's license, OCGA § 40-5-20 (a). Following the denial of his motion for a new trial, Canelas appeals, challenging the sufficiency of the evidence. Canelas also argues that the trial court erred in denying his motion to suppress (1) because there was not probable cause to arrest him for DUI, and (2) because he was not placed under actual, valid arrest prior to the reading of the implied consent notice. For the reasons set forth below, we reverse Canelas's conviction for driving without a valid

license, vacate his sentence, and remand this case to the trial court for resentencing. We affirm the judgment in all other aspects.

Viewed in the light most favorable to support the verdict,[1] the evidence shows the following. On June 12, 2016, a witness called 911 to report a single-vehicle motorcycle crash. Paramedics responded first and assessed Canelas's condition; he had abrasions on his arm and was dazed and confused. A police officer responded at 1:30 a.m., along with a field training supervisor, and found a motorcycle on its side, Canelas on the ground about twenty yards away, and a helmet, a shoe and other articles of clothing scattered between him and the motorcycle. The road where Canelas had crashed was a residential road, on a straight section one-tenth mile past a 90-degree turn. The curb near the motorcycle had been recently scraped and gouged. There was vomit, which smelled of alcohol, in Canelas's helmet and on his beard and jacket. As paramedics prepared to transport Canelas to the hospital, he stated that he had been at a friend's house, where he drank "a couple of beers." He told the officer that he did not remember leaving his friend's house and did not know

---

[1] See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). This recitation of facts is based in part on the evidence which Canelas contends the trial court erroneously admitted. We have rejected his evidentiary challenges for the reasons discussed in Division 2 and 3, infra.

2

how he got to the scene of the crash because he would not have left his friend's house after drinking.

The officer followed the ambulance to the hospital and spoke with Canelas in his treatment room. The officer's training supervisor was also present. The arresting officer noticed that Canelas had bloodshot eyes and a strong odor of alcohol about his person. Asked if he had had anything to drink, Canelas again responded the he had drunk "a couple of beers." The officer verbally told him, "You are under arrest for DUI-less safe," and read the implied consent notice, concluding with a request that he submit to a state administered chemical test of his blood as provided in the implied consent law. The officer testified that he did not put Canelas in handcuffs because he was on the gurney and nurses were putting IVs in his arm and treating the bruising and abrasions on his arm, and he did not want to interfere with the medical treatment. Canelas gave his consent to the blood test, and at 2:46 a.m. an ER nurse drew his blood for testing. The officer left Canelas, who was still receiving medical treatment, in the custody of the hospital security staff and went to the police station with the evidence. Within the hour, the officer sought and obtained an arrest warrant. For reasons not apparent in the record, another officer served the warrant a few days later. The result of the blood alcohol test was a level of 0.153 grams per 100 ml.

3

1. Canelas challenges the sufficiency of the evidence as to each offense. On appeal from a criminal conviction, the appellate court

> view[s] the evidence in the light most favorable to the verdict[,] and an appellant no longer enjoys the presumption of innocence. [The appellate court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, [the appellate court] must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

(a) As a threshold matter, we address the State's contention that Canelas failed to preserve this issue. Specifically, the State argues that he "retracted" the issue of the sufficiency of the evidence by challenging the sufficiency of the evidence in his motion for new trial, even though he had the right to directly appeal on that basis without first submitting the issue to the trial court,[2] and then opting to omit the

---

[2] OCGA §§ 5-6-36 (a) ("The entry of judgment on a verdict by the trial court constitutes an adjudication by the trial court as to the sufficiency of the evidence to sustain the verdict, affording a basis for review on appeal without further ruling by the trial court."); 5-6-40 (g) ("On appeal, a party shall not be limited to the grounds urged in the motion [for new trial] or any amendment thereof."); *Lembcke v. State*, 277 Ga. App. 110, 112 (1) (625 SE2d 505) (2005) ("In criminal cases, . . . challenges

4

transcript of the hearing on his motion for a new trial from the appellate record. The State argues:

> Unfortunately, neither Appellee nor this Court knows to what extent this issue was discussed at the motion for new trial hearing, because Appellant specifically chose not to include the transcript of that hearing on appeal. This Court is therefore precluded from evaluating the nature and extent to which Appellant argued this issue; the extent to which the trial court reconsidered its assessment of the evidence at trial; and whether or not the trial court made any factual findings in conjunction with its ruling on the Amended Motion which may be subject to a different standard of review.

This argument lacks authoritative support. Whether the evidence presented at trial was legally sufficient is plainly a question of law which on appeal we assess independently of the trial court's adjudication, through entry of judgment, that the evidence was sufficient.[3] Whatever transpired at the evidentiary hearing on Canelas's motion for a new trial is simply irrelevant to this Court's consideration of whether the evidence presented at trial was sufficient under the applicable standard. See *Rowan*

---

to the sufficiency of the evidence need not have been raised below, whether at trial or in a motion for new trial.") (citation omitted).

[3] *Clark v. State*, 251 Ga. App. 715, 716 (2) (555 SE2d 88) (2001); *Butler v. State*, 250 Ga. App. 626 (1) (552 SE2d 565) (2001).

*v. State*, 338 Ga. App. 773, 774 (1) (792 SE2d 400) (2016) (rejecting the State's suggestion that, because the appellant had not argued the issue of the sufficiency of the evidence before the trial court in connection with his motion for new trial, the issue was not properly before this Court on appeal); *Thomas v. State*, 322 Ga. App. 734, 734-735 (1) (746 SE2d 216) (2013) (accord).

(b) Canelas contends that there was no evidence of the cause of his motorcycle crash and no other evidence that his driving was less safe. We conclude that, taken together, evidence that Canelas lost control of his motorcycle on a straight stretch of road, coupled with the evidence of his blood alcohol level (nearly double the level that supports a conviction for DUI, per se), his professed lack of memory of leaving his friend's house or driving, and his addled state of mind authorized the trial court to find him guilty of DUI, less safe. *Jones v. State*, 187 Ga. App. 132, 132-133 (1) (369 SE2d 509) (1988) (The evidence authorized conviction of DUI, less safe, where an officer found the defendant's car stopped at a railroad crossing with the defendant slumped over the steering wheel with the engine still running and the transmission in "drive," the defendant fell getting out of his car and was unsteady on his feet, and the defendant's eyes were bloodshot, his speech was slurred, and there was the odor of alcohol about him.); *Blackwell v. State*, 180 Ga. App. 253, 254 (349 SE2d 13) (1986)

(The evidence authorized conviction of DUI, less safe, where the defendant was involved in an accident and an officer observed that his breath and person smelled of alcohol, his eyes were bloodshot and he was unsteady on his feet.).[4]

(c) Canelas contends that there was no evidence that he was driving within three hours before the chemical test that showed he had a blood alcohol concentration of 0.153 grams per ml.[5] Canelas's blood was drawn at 2:46 p.m. The arresting officer testified that he arrived at the scene at 1:30 a.m. while Canelas was being evaluated and treated by paramedics. The evidence supported an inference that Canelas was driving, and crashed his motorcycle, within three hours before his blood was drawn. *Smith v. State*, 325 Ga. App. 405, 407 (750 SE2d 758) (2013); *State v. Gaggini*, 321

---

[4] Cf. *Allen v. State*, 257 Ga. App. 246, 247 (1) (570 SE2d 683) (2002) (reversing conviction where the trooper failed to support his opinion that the defendant was a less safe driver with any facts or observations of the defendant's appearance or conduct that he used to reach his conclusion, noting the absence of evidence that the defendant's speech was slurred, that he smelled of alcohol, that his eyes were red or glassy, that he was unsteady on his feet, that his conduct was unusual or erratic, or that he performed poorly on field sobriety tests, despite the defendant's involvement in a single-vehicle accident and evidence that showed that the defendant had consumed alcoholic beverages).

[5] OCGA § 40-6-391 (a) (5) makes it illegal for someone to "drive or be in actual physical control of any moving vehicle while . . . [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended."

7

Ga. App. 31, 36 (2) (740 SE2d 845) (2013); *Lee v. State*, 236 Ga. App. 128, 129-130 (2) (511 SE2d 238) (1999).

(d) Canelas contends that there was insufficient evidence that he lacked a valid driver's license. The State concedes that the evidence at trial, which consisted of the arresting officer's testimony that he ran Canelas's driver's license through a verification program on a computer in his squad car and he "believe[d]" it came back as a valid license but he did not notice the "M" designation for a motorcycle qualification, was insufficient to support a conviction for violating OCGA § 40-5-20 (a).[6] Accordingly, Canelas's conviction for this offense is reversed.

2. Canelas contends generally that the trial court erred in denying his motion to suppress because there was not probable cause to arrest him for DUI.

> [W]hen a court considers whether an officer had probable cause to arrest a suspect, the court must focus on the facts and circumstances then known to the officer, and it must inquire whether those facts and circumstances *could* lead a prudent person – that is, a reasonable officer

---

[6] See *Williams v. State*, 336 Ga. App. 442, 449 (4) (a) (784 SE2d 808) (2016) (Where a police officer testified at trial that he entered a suspect's driver's license information into a computer database and found that his "privilege in Georgia was not valid," where there was no documentary evidence supporting the officer's claim and no testimony was adduced regarding how or for what reason the driver's privileges purportedly were suspended, the evidence was insufficient to support a conviction for driving with a suspended license.).

– to conclude that the suspect probably has committed an offense. The facts and circumstances known to the officer must be examined altogether, for it is the totality of those facts and circumstances that matters, not any one fact or circumstance standing alone.

(Citations omitted; emphasis in original.) *Hughes v. State*, 296 Ga. 744, 748-749 (2) (770 SE2d 636) (2015).

And where the totality of the facts and circumstances known to an officer would permit reasonable officers to draw differing conclusions about whether the suspect probably has committed a crime, probable cause exists, and it is for the officer – not judges, trial or appellate – to decide which of the several reasonable conclusions to draw.

(Citations omitted.) Id. at 749. "If reasonable officers could have reached different conclusions – some concluding reasonably that [the driver] probably had been driving under the influence, and others reasonably concluding otherwise – then probable cause by definition was established." (Citations omitted.) Id. at 752 (2). "The existence of probable cause is a legal question as to which the appellate courts owe no deference to trial judges." Id. at 752 (2).

Canelas contends that the facts and circumstances known to the officer, as found by the trial court – that he wrecked his motorcycle and was injured; that he was found with vomit on his clothing and in his helmet; that he had bloodshot eyes; that

9

he smelled strongly of alcoholic beverages and admitted having consumed alcohol – amount neither to manifestations of unsafe driving nor physical manifestations of intoxication. He cites to cases in which we have affirmed an order granting a motion to suppress where the evidence showed consumption of alcohol but did not show the effect of that consumption on the defendant, that is, that he was under the influence of alcohol to a degree which rendered him incapable of driving safely.[7]

---

[7] *State v. Encinas*, 302 Ga. App. 334, 336-337 (691 SE2d 257) (2010) (An officer did not have probable cause to arrest a driver for DUI, even though the driver exuded the odor of alcohol, had bloodshot eyes, and refused to take a state-administered chemical test, where the driver showed no signs of being impaired, he was not driving erratically, and the officer did not follow all required procedures in performing the horizontal gaze nystagmus test.), disapproved of by *Hughes v. State*, 296 Ga. at 752 (2); *State v. Damato*, 302 Ga. App. 181, 182 (2) (690 SE2d 478) (2010) (An officer did not have probable cause to arrest a driver for DUI, even though the driver's breath smelled of alcohol and a breath test was positive for alcohol, because the presence of alcohol in a driver's body does not support an inference that the driver is intoxicated and it is less safe for her to drive.); *State v. Gray*, 267 Ga. App. 753, 754-755 (1) (600 SE2d 626) (2004) (An officer did not have probable cause to arrest a driver for DUI, even though the driver was involved in a single vehicle accident, exuded the odor of alcohol, admitted to drinking, was unsteady on her feet, and had bloodshot eyes and dazed appearance, an alcohol sensor showed presence of alcohol in the driver's body, and a horizontal gaze nystagmus test showed two of six clues of intoxication, where the driver stated that another vehicle had forced her off the road causing her to hit the concrete median and her unsteadiness, bloodshot eyes, dazed appearance, and HGN results could have been caused by the impact and the explosion of air bags, and where the officer did not follow all required procedures in performing the HGN test.), disapproved of by *Hughes v. State*, 296 Ga. at 752 (2).

As in *Hughes v. State*, each of the circumstances found by the trial court, while consistent with driving under the influence, is also "susceptible of reasonable explanations other than driving under the influence" and "an innocent explanation for each circumstance might be more probable." 296 Ga. at 750 (2). But, as the Supreme Court emphasized, "we do not consider any fact or circumstance standing alone." Id. In this case, as in *Hughes v. State*, "[t]aken together, a reasonable officer could conclude . . . that driving under the influence was an equally or more probable explanation for the facts and circumstances known to the officer[] than an improbable coincidence of multiple innocent explanations." Id. at 747-748 (2). See *Brandon v. State*, 308 Ga. App. 239, 240 (706 SE2d 772) (2011) (An officer had probable cause to arrest a driver for DUI where the driver was involved in a single vehicle accident and physical evidence at the scene suggested to the officer that the driver had veered off the road, overcorrected, and flipped his vehicle, and the driver smelled of alcohol, admitted drinking, and gave a breath sample that tested positive for alcohol.).[8]

---

[8] See also *Hughes v. State*, 296 Ga. at 752 (2) (Officers had probable cause to arrest a driver for DUI, where the driver ran a red light, struck another car and killed the other driver, appeared sleepy and had "glassy eyes with some redness," "may have been unsteady on his feet," and had some tightly packaged pills on his person which the officers could not immediately identify.); *State v. Carder*, 301 Ga. App. 901, 905 (2) (689 SE2d 347) (2009) (An officer had probable cause to arrest a driver for DUI where the driver was the only person in her vehicle at an accident scene, admitted

11

3. Canelas contends that the trial court erred in denying his motion to suppress chemical test results because he was not placed under actual, valid arrest prior to the reading of the implied consent notice. Specifically, he argues that the first "arrest" by the officer in the hospital room was a complete falsity and not a valid or legal arrest under law because he was arrested pursuant to a warrant a few days later. Because he was not under arrest, and because he had not been involved in a traffic accident that resulted in serious injuries or fatalities as defined by law, he argues, the implied consent reading given in the hospital was therefore invalid.

Under Georgia law, "a suspect who is not involved in a traffic accident resulting in serious injuries or fatalities must be under arrest before implied consent rights are read to him" and a chemical test demanded. *Hough v. State*, 279 Ga. 711, 716 (2) (a) (620 SE2d 380) (2005).[9]

---

drinking, and, during an interview hours later, had a lingering smell of alcohol about her person, a flushed face, and slurred speech.); *Frederick v. State*, 270 Ga. App. 397 (606 SE2d 615) (2004) (An officer had probable cause to arrest a driver for DUI where the driver smelled strongly of alcohol, admitted that he had been drinking, and had glossy eyes.); *Trotter v. State*, 256 Ga. App. 330, 332 (1) (568 SE2d 571) (2002) (An officer had probable cause to arrest a driver for DUI where the driver was involved in an accident, smelled of alcohol, was incoherent, and was unable to pass sobriety tests.).

[9] See OCGA §§ 40-5-55 (a) ("[A]ny person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given

12

[A]n arrest is accomplished whenever the liberty of another to come and go as he pleases is restrained, no matter how slight such restraint may be. The defendant may voluntarily submit to being considered under arrest without any actual touching or show of force. Thus, implied consent is triggered at the point that the suspect is not free to leave and a reasonable person in his position would not believe that the detention is temporary, regardless of whether a "formal arrest" has occurred.

(Citation and punctuation omitted.) Id.

Whether a suspect is under custodial arrest is a mixed question of law and fact. Therefore, to the extent that determination of the issue hinges on resolution of factual questions, an appellate court construes the evidence most favorably to uphold the trial court's findings and accept

---

consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 or if such person is involved in any traffic accident resulting in serious injuries or fatalities."); 40-5-67.1 (a) ("The test or tests required under Code Section 40-5-55 shall be administered as soon as possible at the request of a law enforcement officer having reasonable grounds to believe that the person has been driving or was in actual physical control of a moving motor vehicle upon the highways or elsewhere throughout this state in violation of Code Section 40-6-391 and the officer has arrested such person for a [DUI] violation."); 40-6-392 (a) (4) ("Upon the request of the person who shall submit to a chemical test or tests at the request of a law enforcement officer, full information concerning the test or tests shall be made available to him or his attorney. The arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this Code section.").

13

those findings unless they are clearly erroneous; but the appellate court independently applies the legal principles to those facts.

(Punctuation and footnotes omitted.) *Plemmons v. State*, 326 Ga. App. 765, 768 (1) (755 SE2d 205) (2014).

Construing the evidence in favor of the trial court's findings, we conclude that, even if Canelas was allowed to leave the hospital later, the evidence authorized the trial court to find that *at the time the officer read the implied consent notice to him a reasonable person in his position would have believed that he was under arrest.* *Plemmons v. State*, 326 Ga. App. at 768 (1) (The trial court was authorized to find that a reasonable person in the defendant's position would not think that he was free to leave at the time an officer read the implied consent warnings where the officer, in the suspect's hospital room after an accident, wrote a ticket for DUI, told the suspect that he was under custodial arrest, gave him the ticket, and then read him the implied consent notice.)[10]

---

[10] See also *Clay v. State*, 290 Ga. 822, 825 (1) (A) (1) (725 SE2d 260) (2012) (The trial court was authorized to find that, under the totality of the circumstances, a reasonable person in the defendant's position would have perceived that he was in custody at the time he made a statement, where he awoke to find a police officer in his treatment room and the officer avoided his questions regarding whether he was going to be charged, told him that he "needed" to come down to the police station to talk with the police, never told him that he was not under arrest or that he was free to

14

4. Lastly, the trial court imposed a sentence of twelve months probation for each count of the accusation, to be served concurrently. Because the DUI convictions were predicated on the same conduct, they merged, and the trial court erred in imposing sentence on both, as conceded by the State. *Smith v. State*, 338 Ga. App. 635, 640-641 (5) (791 SE2d 418) (2016); *Fowler v. State*, 294 Ga. App. 864, 868-869 (3) (670 SE2d 448) (2008); *Schlanger v. State*, 290 Ga. App. 407, 415 (8) (659 SE2d 823) (2008) (physical precedent only); *Partridge v. State*, 266 Ga. App. 305, 306 (596 SE2d 778) (2004). Accordingly, we must vacate Canelas's sentence and remand this case to the trial court for resentencing in accordance with this opinion.

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded. Bethel, J., and Senior Appellate Judge Herbert E. Phipps, concur.*

---

leave, and called for a patrol vehicle to transport him to the police station.); *Hughes v. State*, 259 Ga. 227, 228 (1) (378 SE2d 853) (1989) (The trial court was authorized to find that a traffic stop escalated to an arrest when the officer, who was waiting for assistance from other officers, told the driver that he was not free to leave.).